**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JUSTIN POMPOSI** individually and on behalf of other similarly situated individuals, Plaintiffs, | : | **CIVIL ACTION NO.:** |
| | : | **3:09-CV-00340 (VLB)** |
| - against - | : | |
| **GAMESTOP, INC.** Defendant. | : | **June 12, 2009** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

TABLE OF CONTENTS


I. INTRODUCTION ……………………………………………..………………… 1

II. FACTS …………………………………………………………..……………..…. 1

III. GENERAL LEGAL PRINCIPLES ……..………..…...………………………..… 5

A. VINDICATION OF STATUTORY RIGHTS ANALYSIS …………………………………..………………... 6

B. UNCONSCIONABILITY ……………………………..…………… 7

IV. DISCUSSION ………………………………………………..……………… 8

A. DEFENDANT HAS NOT PROVEN AN ENFORCEABLE CONTRACT …………………..…..……………… 8

1. Defendant has not proven that Plaintiff Agreed to "GameStop C.A.R.E.S. Rules Including Arbitration" ……………………………..…………...…. 8

2. Defendant has not proven that the purported agreement is supported by consideration ...…….…..…. 10

B. THE COLLECTIVE ACTION WAIVER IS UNENFORCEABLE UNDER THE SECOND CIRCUIT'S VINDICATION OF STATUTORY RIGHTS ANALYSIS ……………….…………...…. 12

1. The GameStop C.A.R.E.S. collective action waiver fails the "fairness of the provisions" test ….…………… 12

2. The GameStop C.A.R.E.S. collective action waiver undermines Plaintiff's ability to vindicate his claim by imposing individual costs that outweigh potential recovery ……………………………………..…... 13

3. The practical effect of the collective action waiver is that Defendant will be able to engage in unchecked violations of the FLSA …………………………………… 15

4. Defendant's purported waiver of collective action rights undermines a significant "public policy concern" ………………………...………..... 16

C. THE PURPORTED ARBITRATION AGREEMENT IS UNCONSCIONABLE ………………...…………….…...……….... 18

1. The purported arbitration agreement is procedurally unconscionable ……..…………..………… 19

i. The C.A.R.E.S. program is procedurally unconscionable by way of the unequal bargaining power of the parties.....……………… 19

**TABLE OF CONTENTS**
**(continued)**


ii. Defendant's implementation of C.A.R.E.S. created surprise to the extent that the true meaning was hidden and deceptive …..………. 21

a. Defendant's alleged collective action waiver was hidden, and in fact, contradicted by its summary descriptions …………………..…………. 21

b. Defendant misleadingly indicated that "the problem can be resolved faster" than litigation ….……..…………………….. 22

c. Defendant deceptively indicates that the program reduces legal costs for everyone ………..…………………...... 23

d. Defendant misleadingly asserts that its program is "user-friendly" ……………...…. 24

2. The purported arbitration agreement including the alleged waiver of collective actions is substantively unconscionable …………………….….. 25

i. Defendant's program includes a waiver of collective action ……………………………..…. 25

ii. Defendant's program shortens the limitations period of covered claims ……………….……….. 28

iii. Defendant's program does not apply to Defendant ………………………….………. 29

iv. Defendant's program extinguishes Plaintiff's right to bring a claim at the Department of Labor ……………………………...……….... 30

v. Defendant's program imposes prohibitive fees and costs ……………………………………. 31

vi. Defendant's program is unilaterally modifiable and terminable ……………………..…. 32

V. CONCLUSION ……………………………………………………...…… 36

**TABLE OF AUTHORITIES**

***Adkins v. Labor Ready, Inc.*,**
**303 F.3d 496 (4th Cir. 2002) ……………………………………………………... 6, 18**

***Alexander v. Anthony Intern., L.P.*,**
**341 F.3d 256 (3rd Cir. 2003) ……………………………………………………... 33**

***Amchem Prods. Inc. v. Windsor*,**
**521 U.S. 591 (1997) …………………………………………………………….…15**

***Baker & Taylor, Inc. v. AlphaCraze.com Corp.*,**
**578 F.Supp.2d 374 (D. Conn. 2008) …………………………………………. 11**

***Brennan v. Bally Total Fitness*,**
**198 F.Supp.2d 377 (S.D.N.Y. 2002) ………………………………………… 34**

***Brooklyn Sav. Bank v. O'Neil*,**
**324 U.S. 697 (1945) ……………………………………………………. 18, 19, 30**

***Caley v. Gulfstream Aerospace Corp.*,**
**428 F.3d 1359 (11th Cir. 2005) ……………………………………… 5, 12, 14**

***Capone v. Electric Boat Corp.*,**
**2007 WL 1520112 (D. Conn. 2007) ……………………………………………... 11**

***Carter v. Countrywide Credit Industries, Inc.*,**
**362 F.3d 294 (5th Cir. 2004) ……………………………………………………. 6**

***Chao v. Vidtape, Inc.*,**
**196 F.Supp.2d 281 (E.D.N.Y. 2002) ………………………………………… 31**

***Cheshire Mortgage Service, Inc. v. Montes*,**
**223 Conn. 80 (1992) ……………………………………………………………... 21**

***Circuit City Stores, Inc. v. Adams*,**
**279 F.3d 889 (9th Cir. 2002) ………………………………………………… 33**

***Circuit City Stores, Inc. v. Mantor*,**
**335 F.3d 1101 (9th Cir. 2003) ……………………………………………… 6, 8**

***Cook v. United States*,**
**109 F.R.D. 81 (E.D.N.Y. 1985) ………………………………………………... 31**

**TABLE OF AUTHORITIES**
**(continued)**

***Dale v. Comcast Corp.*,**
**498 F.3d 1216 (11th Cir. 2007) …………………………………….… 6, 7, 8, 14, 18**

***Does I v. GAP, Inc.*,**
**2002 WL 1000073 (D.N.J. 2002) ……………………….…………….…..….. 20**

***Deutsche Bank Trust Co. America v. Walters*,**
**2004 WL 1098690 (Conn. Super. 2004) ……………………...……………..…… 21**

***Dumais v. American Golf Corp.*,**
**299 F.3d 1216 (10th Cir. 2002) ……………………………………………..…….. 38**

***Edart Truck Rental Corp. v. B. Swirsky and Co., Inc.*,**
**23 Conn.App. 137 (1990) ……………………………………………..………… 23**

***EEOC v. Waffle House, Inc.*,**
**534 U.S. 279 (2002) ……………………………………………………..……..… 32, 35**

***Eisen v. Carlisle & Jacquelin*,**
**417 U.S. 156 (1974) ……………………………………………………………… 15**

***Ellerbee v. GameStop, Inc.*,**
**2009 WL 886228 (D. Mass 2009) ………………………………………….…. 1, 11**

***Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc.*,**
**626 A.2d 307 (1993) ……………………………………………………... 8, 22, 24, 29**

***Falcon v. Starbucks Corp.*,**
**580 F.Supp.2d 528 (S.D. Tex. 2008) ……………...………………………. 5, 15, 19**

***Ferguson v. United Healthcare*,**
**2008 WL 5246145 (D. Conn. 2008) ……………………………………….... 11**

***Filloramo v. NewAlliance Investments, Inc.*,**
**2007 WL 1206736 (D. Conn. 2007) ……………………………………….... 11**

***Floss v. Ryan's Family Steak Houses, Inc.*,**
**211 F.3d 306 (6th Cir. 2000) …………………………………………….….... 38**

**TABLE OF AUTHORITIES**
**(continued)**

***Gibson v. Neighborhood Health Clinics, Inc.*,**
**121 F.3d 1126 (7th Cir. 1997) ……………………………………………..……… 38**

***Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*,**
**2001 WL 484360 (E.D. Pa. 2001) ………………………………..…………. 11**

***Guyden v. Aetna, Inc.*,**
**544 F.3d 376 (2d Cir. 2008) ……………………………………...……… 11, 12**

***Hoffman-La Roche Inc. v. Sperling*,**
**493 U.S. 165 (1989) ……………………………………...………… 5, 15, 19, 30**

***Hooters of America, Inc. v. Phillips*,**
**173 F.3d 933 (4th Cir. 1999) …………………………..……………………... 38**

***Ingle v. Circuit City Stores, Inc.*,**
**328 F.3d 1165 (9th Cir. 2003) ………………………………………….. *passim***

***In re American Express Merchants' Litigation*,**
**554 F.3d 300 (2d Cir. 2009) ……………………………………………. *passim***

***Kristian v. Comcast Corp.*,**
**446 F.3d 25 (1st Cir. 2006) ……………...………………………..... 6, 7, 16, 18, 20**

***Kuehner v. Dickinson & Co.*,**
**84 F.3d 316 (9th Cir. 1996) ………...……………………………………………. 11**

***Laniak v. Advisory Committee of Brainerd Mfg. Co. Pension Plan*,**
**935 F.2d 1360 (2d Cir. 1991) ……………………………………………...…… 22**

***LaSalle National Bank v. Freshfield Meadows, LLC*,**
**798 A.2d 445 (Conn.App. 2002) ………………………………………………. 8**

***La Torre v. BFS Retail and Commercial Operations, LLC*,**
**2008 WL 5156301 (S.D.Fla. 2008) ……………………………………..…. 6, 13**

***Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*,**
**679 F.2d 1350 (11th Cir. 1982) ……………………………………..……… 22**

***NLRB v. Robbins Tire and Rubber Co.*,**
**437 U.S. 214 (1978) ……………………………………………..……..…... 20**

**TABLE OF AUTHORITIES**
**(continued)**

***Powertel, Inc. v. Bexley*,**
**743 So.2d 570 (Fla.Dist.Ct.App. 1999) ………………………………………… 6**

***Reich v. Sherer Buick Co.*,**
**887 F.Supp. 1142 (C.D. Ill. 1995) ……………………………………………... 31**

***Reich v. Southern New England Telecommunications Corp.*,**
**121 F.3d 58 (2d Cir. 1997) ………………………………………………….... 31**

***Reich v. State of N.Y.*,**
**3 F.3d 581 (2d Cir. 1993) …………………………………………………...…. 31**

***Rogers v. City of Troy*,**
**148 F.3d 52 (2d Cir. 1998) ……………………………………………………. 19, 20**

***Sandoz v. Cingular Wireless LLC*,**
**553 F.3d 913 (5th Cir. 2008) ………………………………….…...………… 19**

***Sidell v. Structured Settlement Investments*,**
**2009 WL 103518 (D. Conn. 2009) ……………………………………………. 11**

***Skirchak v. Dynamics Research Corp.*,**
**508 F.3d 49 (1st Cir. 2007) ……………………………………..... 6, 8, 22, 23, 24**

***Skirchak v. Dynamics Research Corp.*,**
**432 F.Supp.2d 175 (D. Mass. 2006) ………………………...…………. 6, 18, 30**

***Ting v. AT&T*,**
**182 F.Supp.2d 902 (N.D.Cal. 2002) ……………………………………………. 6**

***Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*,**
**234 Conn. 1 (1995) …………………………………………………...………. 10**

**TABLE OF AUTHORITIES**
**(continued)**

## FEDERAL STATUTES

**29 U.S.C. § 202(a) ……………………………………………………………... 18**

**29 U.S.C. § 216(c) ……………………………………………………………... 31**

**29 U.S.C. § 255(a) ……………………………………………………………... 33**

## STATE STATUTES

**Conn. Gen. Stat. § 31-71d(b) …………………………………………………... 22**

**Connecticut Practice Book § 24-1(b) ………………………………………… 28**

**Connecticut Practice Book § 24-23 ............................................................ 29**

## I. INTRODUCTION

**Plaintiff, through his undersigned counsel, hereby opposes the Motion to Dismiss, dated May 4, 2009. Defendant seeks to enforce an alleged waiver of Plaintiff's and its other Store Managers right to initiate, join or recover from "any class, collective or representative action." Simply put, if Defendant's complex, misleading, and deceptive model, which it created after having been sued twice by its Store Managers under the FLSA, is ratified by this court, employers everywhere will copy it and the collective action that Congress created to give employees an "advantage" in enforcing their rights will end. Defendant's tactics, which included an acknowledgment form which fraudulently indicates that collective actions were "included" in the arbitration agreement, are contrary to the mandates of the U.S. Supreme Court, Second Circuit and the Connecticut Supreme Court, and cannot be allowed to stand. Defendant's motion should be denied with prejudice and Plaintiff's collective action should be allowed to proceed as planned.**

## II. FACTS

**Defendant's evidence in support of this motion is limited to the following facts:**

**In September 2007, Plaintiff Justin Pomposi allegedly attended GameStop's yearly conference in Las Vegas, Nevada.[1] Defendant has not**

**[1] Oddly, the case of *Ellerbee v. GameStop*, 2009 WL 886228 (D. Mass 2009), upon which defendant heavily relies, makes mention of an August 2007 conference rather than a September 2007 conference. It is entirely unclear on the record whether there was more than one conference, and what the activities, presentations, or announcements this**

**described the content of this presentation at all.**

**According to Defendant, on or about September 12, 2007, Plaintiff signed a document entitled:**

**"ACKNOWLEDGMENT AND RECEIPT OF THE STORE MANAGER HANDBOOK AND THE GAMESTOP C.A.R.E.S.[2] RULES INCLUDING ARBITRATION"**

**That document includes one paragraph, which states:**

> **"I acknowledge that I have received a copy of the GameStop Store Manager Handbook,[3] including the GameStop C.A.R.E.S. Rules for Dispute Resolution. The Rules set forth GameStop's procedure for resolving workplace disputes ending in final and binding arbitration. The Handbook summarizes certain information about my job and company policies, procedures and practices. I understand that it is my responsibility to read and familiarize myself with the information contained in the Handbook. *I understand that by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S, I am agreeing that all workplace disputes of claims, regardless of when those disputes or claims arose, will be resolved under the GameStop C.A.R.E.S program rather than in court. This includes legal and statutory claims, and class or collective action claims in which I might be included*… "**

**Defendant's Exhibit C (emphasis added).**

**This Acknowledgment was handed to Plaintiff along with the brochure entitled "GameStop power to the players." Defendant's Exhibit B. This brochure "describe[ed] the C.A.R.E.S. program." Parent Affidavit, par. 3. It states that it "is designed as a user-friendly way to resolve disputes *with all the remedies of litigation*, but without the delays and costs." Defendant's Exhibit B (emphasis added).**

---

**previously unmentioned conference included.**

**[2] C.A.R.E.S. stands for "Concerned Associates Reaching Equitable Solutions." Defendant's Exhibit B.**

**[3] Defendant has not supplied a copy of the Handbook itself.**

**Separately, Defendant offers an exhibit entitled:**

**GAMESTOP C.A.R.E.S.**
**RULES OF DISPUTE RESOLUTION INCLUDING ARBITRATION**

**Defendant's Exhibit A.**

**This document bears a different title than the one described in the Acknowledgment. That document was called "GAMESTOP C.A.R.E.S Rules *for* Dispute Resolution." *Id* (emphasis added).[4]**

**Defendant's Exhibit A includes fourteen (14) pages, an Internal Review Request Form, and a Notice of Intent to Arbitrate. On the topic of collective action claims, this document provides:**

> **"NO COVERED CLAIM MAY BE INITIATED OR MAINTAINED ON A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR UNDER THESE RULES, INCLUDING ARBITRATION.**
> **…**
> **A PERSON COVERED BY THESE RULES MAY NOT PARTICIPATE AS A CLASS OR COLLECTIVE ACTION REPRESENTATIVE OR A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MEMBER OR BE ENTITLED TO A RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION."**

**Defendant's Exhibit A, page 2.**

**It is this language which Defendant presently offers as being a waiver of Plaintiff's right to bring this collective action.**

**According to Defendant's procedures, Plaintiff would have agreed to these terms, not by his signature, but instead by continuing his employment with GameStop *"following the effective date of GameStop C.A.R.E.S."* Defendant's Exhibit C. It is unknown from Defendant's**

**[4] Defendant has offered no explanation for this discrepancy. It is unknown whether or not there are two separate documents.**

**Exhibits what date Plaintiff allegedly agreed to these procedures, since there is no "effective date" on any of the documents provided. The only reference to "effective date" in the document is a definition on page 15 that proclaims the "Effective Date is the date announced by GameStop as the effective date of the Rules." Defendant's Exhibit A, page 15. Defendant offers no evidence of whether or not this announcement was ever made.[5]**

**Additionally, Defendant's Exhibit A provides:**

> **If any court of competent jurisdiction declares that any part of GameStop C.A.R.E.S., including these Rules, is invalid, illegal or unenforceable (*other than as noted for the class action, collective action and representative action waiver above*), such declaration will not effect the legality, validity or enforceability of the remaining parts, and provision of GameStop C.A.R.E.S. will be valid, legal and enforceable to the fullest extent permitted by law.**

**Defendant's Exhibit A, page 3 (emphasis added).**

**Accordingly, if the Collective Action waiver provisions of this document are found to be "invalid, illegal or unenforceable", then the entire agreement is unenforceable, and this matter remains subject to the jurisdiction of this court.**

**Plaintiff recalls attending this meeting in Las Vegas and receiving the Acknowledgment, the Handbook and the Brochure. Affidavit of Pomposi, pars. 3-6. He understood that he was to sign the Acknowledgment and then, at some point in the future, read the Handbook. Pomposi, par. 7. He understood from the language of the Acknowledgment that the C.A.R.E.S. program included all "class or collective actions claims in which [he] might**

**[5] But see the affidavit of Daniel Parent indicating that the effective date "was September 17, 2007" without indicating if, when or how this date was announced. Affidavit of Parent, par. 10.**

**be included." Pomposi, par. 9. Mr. Pomposi does not recall whether or not Mr. Parent attended or whether or not there was a "presentation" of the C.A.R.E.S. program. Pomposi, pars. 11-12. Mr. Pomposi does not recall being told whether or not the C.A.R.E.S. program going to be "effective" on any particular date. When Mr. Pomposi went to work on September 18, 2007, the day following the date that Mr. Parent claims the C.A.R.E.S. program was "effective", he did so not in order to express his assent to the program, but rather because he was scheduled to work and needed the job. Pomposi, par. 17.**

## III. GENERAL LEGAL PRINCIPLES

**The Collective Action provisions of statutes such as the FLSA and the ADEA are intended to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."** ***Hoffman-La Roche Inc. v. Sperling*****, 493 U.S. 165, 170 (1989).** ***See also Falcon v. Starbucks Corp.*****, 580 F.Supp.2d 528, 541 (S.D. Tex. 2008) (citing** ***Hoffman*****).**

**Despite these strong Congressional and Supreme Court pronouncements, employers have recently attempted to thwart this Congressional policy by attempting to obtain waivers of the right to proceed collectively in an action under the FLSA. Courts have frequently held such waivers of class or collective actions are unenforceable.[6]** ***See,***

---

[6] **Cases cited by Defendant's counsel in footnote four of their memorandum are distinguishable from the current case. In** ***Caley*****, the court upheld the ban on collective actions because it was "consistent with the goals of 'simplicity, informality and expedition touted by the Supreme Court in** ***Gilmer*****.'"** ***Caley v. Gulfstream Aerospace Corp.*****, 428 F.3d 1359, 1378 (11th Cir. 2005). The instant arbitration procedure is far from simple, informal and expeditious. See Section IV(C)(1)(i)(d). It is also more one-sided to the extent that it only covers employee claims, unlike the bilateral arbitration agreement in** ***Caley*****.** ***See***

***e.g., In re American Express Merchants' Litigation*, 554 F.3d 300, 320 (2d Cir. 2009) (declining to enforce class action waiver); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) (holding class action waiver unconscionable); *Kristian v. Comcast Corp.*, 446 F.3d 25, 61 (1st Cir. 2006) (invalidating class action waiver of arbitration agreement); *Skirchak v. Dynamics Research Corp.*, 432 F.Supp.2d 175, 181 (D. Mass. 2006) (holding waiver of collective action rights in arbitration agreement unconscionable and unenforceable); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 63 (1st Cir. 2007) (affirming the District Court, *supra*); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003) (finding arbitration agreement containing collective action waiver unconscionable); *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003) (same); *Ting v. AT&T*, 182 F.Supp.2d 902, 918 (N.D.Cal. 2002) (arbitration clause containing class action waiver held substantively unconscionable); *Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla.Dist.Ct.App. 1999) (holding class action waiver and arbitration agreement as a whole unconscionable).**

**Courts have analyzed the validity and enforceability of these alleged waivers under two theories: vindication of statutory rights analysis and**

---

***Caley* at 1376. Furthermore, to the extent that it relies on *Gilmer*, the Second Circuit has recognized the limited applicability of the dicta in that case. *See American Express* at 314. The Fifth Circuit, in *Carter*, based its holding on the narrower Texas law of unconscionability and the dicta in *Gilmer* previously discussed. *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294 (5th Cir. 2004). The Fourth Circuit, in *Adkins*, limited its analysis to whether or not "Congress [through the enactment of the FLSA] intended to confer a nonwaivable right to a class action under that statute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). Furthermore, the plaintiff in *Adkins* failed to offer any evidence that the arbitration would be cost prohibitive, evidence that the Second Circuit has held to be central to the analysis. *American Express* at 321. Defendant's reference to *La Torre* offers no additional authority, since *La Torre* relied on *Caley*, which has been distinguished above. *La Torre v. BFS Retail and Commercial Operations, LLC*, 2008 WL 5156301 (S.D.Fla. 2008).**

**unconscionability.**

**A. VINDICATION OF STATUTORY RIGHTS ANALYSIS**

**The Second Circuit has recently held that the enforceability of agreements that purport to waive class or collective action rights is analyzed under what it calls a "vindication of statutory rights analysis."** ***In re American Express Merchants' Litigation*****, 554 F.3d 300, 320 (2d Cir. 2009);** ***see also Kristian v. Comcast Corp.*****, 446 F.3d 25 (1st Cir. 2006) (invalidating a collective action waiver under this theory). In** ***American Express*****, the Second Circuit invalidated a class action waiver "because to do so would grant Amex de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery."** ***American Express*** **at 320.**

**In holding the waiver to be unenforceable, the Court adopted the reasoning of the Eleventh Circuit:**

> **"Relevant circumstances may include,** ***but are not limited to*****, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical effect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns."**

***Id*** **at 321 (emphasis added);** ***see also Dale v. Comcast Corp.*****, 498 F.3d 1216 (11th Cir. 2007) (holding arbitration agreement including collective action waiver unenforceable).**

**B. UNCONSCIONABILITY**

**"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise."** ***LaSalle National Bank v. Freshfield Meadows, LLC,*** **69 Conn.App. 824, 837, 798 A.2d 445 (2002) (Internal quotation marks omitted). "The element of unfair surprise has frequently been termed by commentators and courts as procedural unconscionability and is implicated by bargaining improprieties in the contract formation process. The element of oppression has been termed substantive unconscionability and is implicated by overly harsh contract terms." (Internal quotation marks omitted.)** ***Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc.,*** **31 Conn.App. 455, 463 n.12, 626 A.2d 307 (1993).**

**Principles of unconscionability have been applied to invalidate employer attempts to force employees to waive their right to proceed collectively in FLSA actions.** ***See, e.g., Circuit City Stores, Inc. v. Mantor*****, 335 F.3d 1101 (9th Cir. 2003) (invalidating a collective action waiver on unconscionability grounds);** ***Ingle v. Circuit City Stores Inc.*****, 328 F.3d 1165 (9th Cir. 2003) (holding collective action waiver to be unconscionable);** ***Skirchak v. Dynamics Research Corp.*****, 508 F.3d 49 (1st Cir. 2007) (invalidating collective action waiver on unconscionability grounds);** ***Dale v. Comcast Corp.*****, 498 F.3d 1216 (11th Cir. 2007) (holding arbitration agreement containing collective action waiver substantively unconscionable).**

## IV. DISCUSSION

**Defendant's motion to dismiss, or in the alternative to compel arbitration, should be denied for four reasons.**

### A. DEFENDANT HAS NOT PROVEN AN ENFORCEABLE CONTRACT.

**Defendant has not proven either that Plaintiff agreed to this procedure or that it is supported by consideration.**

#### 1. Defendant has not proven that Plaintiff agreed to "GameStop C.A.R.E.S. Rules including Arbitration."

**The language of the Acknowledgment itself does not indicate that Plaintiff agreed by his signature.[7] Instead, it includes a complicated procedure whereby Plaintiff would agree by the fact that he (a) learns of the "effective date" of the document by some announcement which has not been proven, and (b) continued working for presumably at least one day after that date. Defendant's Exhibit C.**

**There is no evidence on this record that the effective date was ever "announced" to Plaintiff or to anyone. Mr. Parent's Affidavit falls far short of this important fact. He states that the effective date "*was* September 17, 2007." Parent Affidavit, par. 10 (emphasis added). He never explains that it was "announced", how it was announced, when it was announced, or that Plaintiff heard and understood this announcement.**

**[7] Defense counsel has stated in her memorandum that "Plaintiff executed a written acknowledgment of the C.A.R.E.S. program on September 12, 2007, and agreed to be bound by its procedures. Parent Aff., par. 4 and Exhibit C thereto." This statement is misleading in two ways. First, Mr. Parent did not say in his paragraph four that Mr. Pomposi "agreed to be bound by its procedures." Secondly, Defendant's own document, entitled "ACKNOWLEDGMENT AND RECEIPT OF THE STORE MANAGER HANDBOOK" does not contain language suggesting that, by his signature, Plaintiff agreed to these terms.**

**Of course, Defendant cannot prove that Plaintiff agreed by continuing his employment after the effective date was announced when it has not proven that the announcement ever took place.**

**Even if Defendant proves that the effective date was announced to Plaintiff, there is another reason why Defendant cannot prove assent. The Connecticut Supreme Court has held that continued employment, the very vehicle that Defendant claims was evidence of assent, can never be considered sufficient evidence of assent in an employment contract.**

> **"When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms. [citations omitted]**
>
> **If we were to accept the defendant's argument to the contrary, an employee whose preexisting contract provided that his or her employment could be terminated only for cause would have no way to insist on those contractual rights. The employee's only choices would be to resign or to continue working, either of which would result in the loss of the very right at issue, that is, the loss of the right to retain employment until terminated for cause. The fact that an employee continues working, therefore, may be relevant to determining whether he or she consented to the new contract, but *cannot itself mandate a finding of consent*. [citations omitted]."**

***Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc*., 234 Conn. 1, 18, 662 A.2d 89, 99 (1995) (emphasis added).**

**As this case makes clear, Plaintiff's continued employment with Defendant cannot itself "mandate a finding of consent." *Id*.**

**Defendant's cases do not establish that Plaintiff's continued employment under these circumstances (i.e. - without having been told the**

**effective date of the program) is sufficient evidence of assent. The plaintiff in *Ellerbee*, a case that Defendant relies on heavily, was aware of the effective date of the GameStop C.A.R.E.S. program when he made the decision to report to work. *Ellerbee v. GameStop, Inc.*, 604 F.Supp.2d 349, 353 (D. Mass. 2009). In *Capone,* a case discussed at length in Defendant's memorandum, there was no claim by the plaintiff that the effective date was not announced. The sole factual issue in that case was whether or not Capone had received and read the policy. *Capone v. Electric Boat Corp.*, 2007 WL 1520112 at *3 (D. Conn. 2007).**

**Here, Defendant has introduced no evidence showing that Plaintiff was aware of any effective date, nor that Defendant even attempted to communicate a date to Plaintiff. The plaintiffs in *Guyden*, *Baker & Taylor*, *Kuehner*, *Giordano*, *Sidell*, *Bell*, *Ferguson,* and *Filloramo* all signed agreements (not mere acknowledgements of receipt) wherein they *expressly* agreed to arbitrate certain claims. *Guyden v. Aetna*, 544 F.3d 376, 380 (2d Cir. 2008); *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 578 F.Supp.2d 374, 376 (D. Conn. 2008); *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319 (9th Cir. 1996); *Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*, 2001 WL 484360 at *2 (E.D. Pa. 2001); *Sidell v. Structured Settlement Investments*, 2009 WL 103518 at *1 (D. Conn. 2009); *Ferguson v. United Healthcare*, 2008 WL 5246145 at *1 (D. Conn. 2008); *Filloramo v. NewAlliance Investments, Inc.*, 2007 WL 1206736 at *1 (D. Conn. 2007). Plaintiff's signature merely acknowledges receipt of a handbook, and**

**cannot constitute an expression of assent to this program.**

**2. Defendant has not proven that the purported agreement is supported by consideration.**

**By its own terms, the Rules impose no obligation on Defendant. The only claims subject to arbitration are claims "brought by an existing or former employee or job applicant,…" Defendant's Exhibit A, page 4.**

**Defendant claims that "Plaintiff was provided consideration for the agreement by his continued employment with GameStop. Parent Aff., ¶ 8 and Exhibit B at 4." Defendant's Memorandum, page 2. This claim is unsupported by the evidence proffered by Defendant.[8] There is simply no evidence on this record that Plaintiff's acceptance of this program was an express condition of his continued employment.**

**There are easier and clearer ways of drafting language which states that acceptance of an arbitration agreement is a condition of employment. One of Defendant's cases offers an example. In *Guyden*, the document stated that if she "were offered employment [at Aetna], a condition of the offer and [her] acceptance [was] that [she] agree[d] to use Aetna's mandatory/binding arbitration program instead of the courts to resolve employment-related legal disputes." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 380 (2d Cir. 2008). *See also Caley v. Gulfstream Aerospace Corp.,* 428 F.3 1359, 1364 (11th Cir. 2005) ("This policy, which will be become effective on August 1, 2002, will be a condition of continued employment. All covered**

**[8] Defense counsel's citation for this proposition is curious. Neither Mr. Parent's affidavit at paragraph 8 nor the brochure at page 4 say that Plaintiff's continued employment was contingent upon his acceptance of the terms of this program.**

**claims will be subject to this DRP at that time"); *La Torre v. BFS Retail and Commercial Operations, LLC*, 2008 WL 5156301 at *2 (S.D.Fla. 2008) ("As a condition of my employment…I agree that I will be bound by the terms of the Plan…").**

**Here, the Acknowledgement's statement that "by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S., I am agreeing…[to the] GameStop C.A.R.E.S. program…" does not clearly indicate that agreement to the program is a condition of continued employment.**

**Accordingly, on this record, Defendant has not proven that the purported agreement is supported by consideration.**

**B. THE COLLECTIVE ACTION WAIVER IS UNENFORCEABLE UNDER THE SECOND CIRCUIT'S VINDICATION OF STATUTORY RIGHTS ANALYSIS**

**In *American Express*, the Second Circuit adopted a test to determine whether a purported waiver of a statutory right is enforceable. The test is whether it "removes a plaintiff's only reasonably feasible means of recovery." *American Express* at 321.**

> **"Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical effect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns."**

***Id* at 321 (emphasis added).**

**Defendant's purported collective action waiver fails this test.**

### 1. The GameStop C.A.R.E.S. collective action waiver fails the "fairness of the provisions" test

**The Second Circuit pointed to the Eleventh Circuit's opinion in *Dale v. Comcast* in framing its test for enforceability. In *Dale*, the Eleventh Circuit held that an arbitration agreement, which contained a class action waiver, was unenforceable because it was substantively unconscionable. "[S]ubstantive unconscionability looks to the contractual terms themselves." *Dale* at 1219 (citation omitted).[9] Accordingly, substantive unconscionability analysis is applicable to determine whether or not a challenged program fails the "fairness of the provisions" test.**

**As discussed *infra* in Section IV(C)(2), the purported arbitration agreement is substantively unconscionable. It includes a waiver of collective actions (Section i). More specifically, it prevents employees from initiating collective actions, joining collective actions as members, or even recovering from collective actions brought by others, including the Secretary of Labor. It shortens the limitations period of Covered Claims (Section ii). It does not apply to Defendant and is therefore one-sided (Section iii). It eliminates Plaintiff's ability to bring a claim with the Department of Labor and/or Small Claims Court (Section iv). It imposes prohibitive fees and costs (Section v). Finally, it is one-sided because it is unilaterally modifiable by Defendant (Section vi).**

**[9] Defendant conveniently ignores this more recent holding of the Eleventh Circuit Court of Appeals on this issue and instead relies on the earlier Eleventh Circuit opinion of *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005).**

**These provisions are unfair such that Plaintiff's claims "cannot reasonably be pursued as individual actions."** ***Id*.**

**2. The GameStop C.A.R.E.S. collective action waiver undermines Plaintiff's ability to vindicate his claim by imposing individual costs that outweigh potential recovery**

**GameStop's collective action waiver is unenforceable because it imposes prohibitive costs upon Plaintiff in order to vindicate his claim when compared with his potential recovery. Without the ability to proceed collectively, prospective plaintiffs who have signed this agreement may be unable to vindicate their statutory right to a fair day's pay for a fair day's work. Without the "advantage of lower individual costs to vindicate rights by the pooling of resources," Defendant's employees will likely not choose to vindicate their rights.** ***Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989).** ***See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 541 (S.D. Tex 2008) (citing *Hoffman*).**

**The United States Supreme Court has recognized that certain claims *must* be brought as a collective action because "[e]conomic reality dictates that [Plaintiff's] suit proceed as a class action or not at all.** ***Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). The Second Circuit has further held that the mere possibility of the recovery of attorney's fees does not cure the problem of**

**prohibitive costs. *American Express* at 318. "[Plaintiffs] must include the risk of losing, and thereby not recovering any fees, in their evaluation of their suit's potential costs. Thus, [an employer's] reply to the effect that '[a]n arbitrator can award to same reasonable costs that are recoverable by statute,' plainly does not solve the problem". *Id*.**

**Here, Plaintiff back pay claim is, at most, $11,000. Affidavit of Pomposi, par. 21. This case is expected to incur attorney's fees and costs between $45,000 and $60,000. Affidavit of Hayber at pars. 3, 4.[10] Plaintiff would be unable to find an attorney willing to take such a claim on a contingency basis due to the small size of the award and the amount of time necessary to prepare such a case. *See Kristian* at 60 ("The actual damages sought by the named plaintiffs are relatively insubstantial…it would not make economic sense for an attorney to agree to represent any of the plaintiffs…in exchange for 33 1/3% or even a greater percentage of the…recovery."). Plaintiff cannot afford to hire an attorney for this case if he is forced to do it on an individual basis.[11] Even if Plaintiff wanted to vindicate his rights by using the free services of the Connecticut Department of Labor or the inexpensive and user-friendly forum that is Small Claims Court, Defendant's Rules forbids it (see Section IV(C)(2)(iv) and (v) *infra*).**

**[10] An attorney would be necessary in the arbitration provided for under the GameStop C.A.R.E.S. program. The rules provide that the Federal Rules of Evidence govern the rules of evidence for arbitration and motions may be granted only if they are permitted by the Federal Rules of Civil Procedure. Defendant's Exhibit A, page 11.**

**[11] Plaintiff lost his job at GameStop, and GameStop successfully contested his unemployment claim. Pomposi Affidavit, pars. 2, 20. Plaintiff is currently employed at Target, being paid $8.00 an hour. *Id*.**

**Since the collective action waiver removes the only reasonably feasible means by which Plaintiff can vindicate his statutory rights, this court should hold it to be unenforceable.**

**3. The practical effect of the collective action waiver is that Defendant will be able to engage in unchecked violations of the FLSA**

**An important factor in the Second Circuit's analysis of collective action waivers is the extent to which such a waiver may operate as "de facto immunity from…liability by removing the plaintiffs' only reasonably feasible means of recovery." *American Express* at 320. To the extent that individual employees are dissuaded from bringing claims because of the prohibitive expense of attorney's fees and costs, the practical effect of the collective action waiver will be to create such "de facto immunity."**

**We need look no further for the truth of this statement than the fact that Defendant itself created and attempted to implement this policy. In fact, Defendant has recently been sued in similar actions. In 2004 and 2006, former employees sued GameStop in Louisiana, asserting a nationwide class action for Store Managers. *See Kohler v. GameStop Inc.*, 06-cv-02017-SRD-ALC (E.D. La. 2006); *Kurtz v. GameStop Inc.*, 04-cv-02172-RTH-MEM (E.D. La. 2005). After those cases were resolved, Defendant distributed the present C.A.R.E.S program to its Store Managers. It is clear that Defendant is attempting to avoid FLSA collective actions by its managers.**

**"If the collective action waiver is enforced, [GameStop] will be shielded from liability, even where it may have violated the [FLSA].**

**Eradicating the private enforcement component from [the FLSA] cannot be what Congress intended when it included strong private enforcement mechanisms and incentives in [that law]."** ***American Express*** **at 320 (citing** ***Dale v. Comcast Corp.*****, 498 F.3d 1216, 1224 (11th Cir. 2007).** ***See also Kristian*** **at 61 (emphasis added).**

**4. Defendant's purported waiver of collective action rights undermines a significant "public policy concern"**

**Another important factor in the Second Circuit's analysis of the enforceability of collective action waivers is the presence of "related public policy concerns."** ***American Express*** **at 321;** ***see also Dale*** **at 1224.**

**"Congress' principal purpose in enacting the FLSA was to protect workers from substandard wages, oppressive working hours, and labor conditions that are detrimental to maintenance of minimal standards of living necessary for the health, efficiency, and well-being of workers." 29 U.S.C. § 202(a).[12]**

**The FLSA's purpose is to protect "the class of employees that possesses the least bargaining power in the work force: 'the unprotected, unorganized and lowest paid of the nation's working population.'"** ***Skirchak v. Dynamics Research Corp.*****, 432 F.Supp.2d 175, 181 (D.Mass. 2006) (citing** ***Brooklyn Sav. Bank v. O'Neil*****, 324 U.S. 697, 707 n. 18 (1945)).**

**The Second Circuit has expressly recognized that "[t]he FLSA sets a**

**[12] But see Defendant's reliance on the Fourth Circuit's opinion in** ***Adkins v. Labor Ready*****, where the court took the position that "it is not the province of the judiciary to try to eliminate the inequities inevitable in a capitalist society."** ***Adkins*** **at 501-502 (relying on a case arising out of West Virginia common law and refusing to find unconscionable a seven day notice of termination provision in a contract). Plaintiff, of course, rejects the application of this holding to the FLSA, a statute specifically designed to "eliminate the inequities inevitable in a capitalist society."** ***See Hoffman supra*****.**

**national 'floor' in terms of working conditions, in order to protect workers from substandard wages and excessive hours that might otherwise result from the free market," and noted that employees may "contract for additional rights *above* those guaranteed by the statute." *Rogers v. City of Troy*, 148 F.3d 52, 58 (2d Cir. 1998).**

**"A collective action allows…plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). *See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 541 (S.D. Tex 2008) (citing *Hoffman*). The Fifth Circuit has held that an employees right to the procedure of a collective action is as important as substantive rights. It held that employers cannot "pick off" potential collective actions by tendering a make-whole offer of judgment to a representative plaintiff because "allowing such a defensive strategy would frustrate the FLSA collective action provision allowing for the aggregation of small claims." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 922 (5th Cir. 2008).**

**Courts have rejected employer attempts at obtaining waivers of these important rights. In *Brooklyn*, the United States Supreme Court also held that "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages." *Brooklyn* at 707. The Second Circuit, relying on *Brooklyn* in a case involving an employer's attempt to avoid the prompt payment requirement of the FLSA, stated "waiver or**

**agreement does not insulate a practice from being held to be a violation of the FLSA."** ***Rogers*** **at 57. These cases illustrate that most rights under the FLSA are non-waivable, even if the waiver is made knowingly and voluntarily.**

**Among the reasons for the importance of this procedure are that employees may be reluctant to file individual actions. The Supreme Court has recognized this truth. "Not only can the employer fire the employee, but job assignments can be switched, hours can be adjusted, wage and salary increases can be held up, and other more subtle forms of influence exerted."** ***NLRB v. Robbins Tire and Rubber Co.*****, 437 U.S. 214, 240 (1978).** ***See also Does I v. GAP, Inc.*****, 2002 WL 1000073, *8 (D.N.J. 2002) ("alleged fear of retaliation by the defendants make it improbable that the putative class members would even pursue individual actions").**

**The First Circuit has held that weakening even one enforcement mechanism of the FLSA undermines the public policy behind this important law:**

> **"When Congress enacts a statute that provides for both private and administrative enforcement actions, Congress envisions a role for both types of enforcement. Otherwise, Congress would not have provided for both. Weakening one of those enforcement mechanisms seems inconsistent with the Congressional scheme.** ***Eliminating one of them entirely is surely incompatible with Congress's choice.*****"**

***Kristian*** **at 59 (emphasis added).**

**These Congressional policy concerns are especially strong in this case. Plaintiff seeks to not only vindicate his own statutory rights to fair**

**payment of wages, but to represent numerous Store Managers employed by Defendant who are in exactly the same position. Furthermore, the enforcement of collective action waivers such as that found in the Defendant's program could spell the end of the FLSA collective action, as well as collective or class actions under other statutes, on a nationwide scale, a result Congress could not have possibly intended.**

**Accordingly, the public policy concerns behind the collective action provisions of the FLSA outweigh any argument for honoring the collective action waiver in this case, and this court should decline to enforce the provision.**

### C. THE PURPORTED ARBITRATION AGREEMENT IS UNCONSCIONABLE[13]

**In addressing claims of unconscionability, Connecticut courts evaluate two aspects of unconscionability, one procedural, which is intended to prevent unfair surprise, and the other substantive, which is intended to prevent oppression. *See Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 88-89 (1992); *Deutsche Bank Trust Co. America v. Walters*, 2004 WL 1098690 at *2 (Conn. Super. 2004). A claim of unconscionability must be decided individually on its particular facts and circumstances. *Cheshire* at 89.**

---

**[13] Although the Second Circuit in *American Express* applied the vindication of statutory rights line of cases, it did not foreclose an unconscionability analysis. Unconscionability analysis is a broader examination of the specific terms and surrounding circumstances of a contract that may not be necessary under a vindication of statutory rights analysis.**

**1. The purported arbitration agreement is procedurally unconscionable**

**"The element of unfair surprise has frequently been termed by commentators and courts as procedural unconscionability and is implicated by bargaining improprieties in the contract formation process."** ***Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc.,*** **31 Conn.App. 455, 463 n.12, 626 A.2d 307 (1993). To the extent that an arbitration clause contains a waiver of a right, a relevant analysis is whether or not the waiver is "knowing and voluntary."** ***Skirchak*****, 508 F.3d at 57;** ***see also Laniak v. Advisory Committee of Brainerd Mfg. Co. Pension Plan*****, 935 F.2d 1360, 1368 (2d Cir. 1991) (holding that waivers under ERISA must be knowing and voluntary and discussing elements of this analysis);** ***Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*****, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (waivers or releases of claims for back wages under the FLSA are not enforceable unless they are either "negotiated or supervised by the Department of Labor; [or] entered as a stipulated judgment in an action brought against [the employer].") This concept is particularly applicable in Connecticut, which has strong and employee friendly laws regarding the enforcement of waivers/releases of wage claims.** ***See, e.g., C.G.S.*** **§ 31-71d(b).**

***i. The C.A.R.E.S. program is procedurally unconscionable by way of the unequal bargaining power of the parties.***

**Defendant's program was not negotiated between the parties but instead was submitted to Plaintiff on a "take it or leave it" basis. It was submitted to all management employees, including Plaintiff, as the**

**company's standard arbitration agreement. Furthermore, GameStop has reserved the right to unilaterally modify its terms simply "by giving covered employees thirty (30) calendar days notice:" Defendant's Exhibit A, p. 3. GameStop cannot realistically claim that Plaintiff had any opportunity to negotiate the terms of the agreement. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003) (holding that such an inequality of bargaining power rendered arbitration agreement procedurally unconscionable); *Skirchak*, 508 F.3d at 58 ("The enforceability depends on the governing state's contract law and the facts of the individual cases, including…whether the employee had a 'meaningful choice'").**

**Importantly, Mr. Pomposi was, at the time he allegedly entered into this agreement, twenty five years old and had never before held a management position with any employer. Pomposi Affidavit, par. 3. Mr. Pomposi's education at the time consisted only of a high school degree, and 60 credits at Central Connecticut State University. Plaintiff's Exhibit A. The plaintiff's education and business sophistication are relevant to this analysis. *Skirchak*, 508 F.3d at 58. *See also Edart Truck Rental Corp. v. B. Swirsky and Co., Inc.*, 23 Conn.App. 137, 143 (1990). Plaintiff hardly had the education and business sophistication needed to protect his interests. This lack of sophistication will likely be true for all class members since Defendant, on its job posting, only requires a high school diploma "with some college preferred." Plaintiff's Exhibit B.**

**Defendant minimized the likelihood that plaintiff would clearly**

**understand the terms of the program by way of the timing of the implementation. The Handbook was allegedly provided to Plaintiff on Wednesday, September 12, 2007, while in Las Vegas. According to Mr. Parent, the program was to take effect only five days later on Monday, September 17th. This schedule gave Plaintiff only four days to read and understand the program. Such short time frames have been held unconscionable by courts. "[T]he content, the obscurity and the timing of the e-mail and the failure to require a response raise unconscionability concerns."** ***Skirchak*****, 508 F.3d at 60 and cases cited therein.**

***ii. Defendant's implementation of C.A.R.E.S. created surprise to the extent that the true meaning was hidden and deceptive.***

**Defendant's program is procedurally unconscionable in that it is deceptive as to many of its terms and conditions. This analysis should give "particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party."** ***Skirchak*****, 508 F.3d at 59 (internal citation omitted).** ***See also Emlee*** **at 464 (applying the doctrine of unfair surprise in an unconscionability analysis).**

**a. Defendant's alleged collective action waiver was hidden, and in fact, contradicted by its summary descriptions**

**Defendant's procedure deceived Plaintiff to the extent that its alleged collective action waiver was hidden and contradicted by the acknowledgement form and its brochure.**

**As discussed above in the facts, the only document that Mr.**

**Pomposi actually signed contained language that stated that "collective action claims in which [he] might be included…will be resolved under the GameStop C.A.R.E.S. program rather than in court." Defendant's Exhibit C. Any reasonable person reading this document would believe that collective action procedures *may be* maintained in arbitration. No reasonable person would believe that, by agreeing to these procedures, they were *waiving* their right to bring, join, or recover pursuant to a collective action.**

**Furthermore, GameStop's brochure includes, in its fourth bullet point, the following:**

**"FULL REMEDIES**
**The arbitrator can award the same remedies as a court."**

**Defendant's Exhibit B, page 4.**

**Again, no reasonable person reading this document would believe that they were waiving *any* right or procedure that a court could provide.**

**It almost goes without saying that these statements in the documents that Defendant used to describe its procedure contradict the actual language buried in the procedure itself.**

**b. Defendant misleadingly indicated that "the problem can be resolved faster" than litigation**

**In its brochure, Defendant included the following:**

**"QUICK RESOLUTION**
**"The problem can be resolved faster—in a matter of weeks or months rather than years."**

**Defendant's Exhibit B, page 4.**

**This statement is misleading because there is nothing about their**

**detailed procedures which are likely to be any faster than litigation. In fact, these procedures, in many ways, are more cumbersome and time-consuming than court.**

**There is a mandatory internal review procedure that will occupy at least one month before arbitration can be commenced. Defendant's Exhibit A, page 5. Additionally, procedures include the selection of a panel of arbitrators. Defendant's Exhibit A, page 9, section 1. The procedure contemplates conferences akin to pretrial conferences for the purpose of scheduling the proceedings. Defendant's Exhibit A, page 10, section 4. No such procedure exists in court. This procedure itself could take many months. The procedure contemplates detailed, "prehearing discovery." Defendant's Exhibit A, page. 10, section 5. This phase is no different than the discovery phase of a court trial. It includes interrogatories, document requests and depositions. There is nothing in this section of the procedures that suggests it is in any way faster than being in court. To the contrary, the procedures themselves state: "Prehearing discovery may take any form allowed for by the Federal Rules of Civil Procedure,…" Defendant's Exhibit A, page 11.**

**The procedures also provide for "any motion permitted by the Federal Rules of Civil Procedure." Defendant's Exhibit A, page 11, section 6. Of course, this Court can take judicial notice that such motions can occupy many months of the Court's time. Defendant's procedures also provide for post-hearing briefs. Defendant's Exhibit A, page 12, section 11.**

**The reality of arbitration hearing procedures also suggests that this procedure is no faster, and in fact may be slower, than a court trial, especially one brought via the Small Claims Division of Connecticut's Superior Court. Arbitrators frequently do not schedule hearing dates in succession, and hearings, which may take multiple days, might take months to complete.**

**In sum, Defendant has been misleading to the extent that it has stated that these procedures are faster than a court trial.**

**c. Defendant deceptively indicates that the program reduces legal costs for everyone**

**Defendant's procedure is deceptive to the extent that it states:**

**"ECONOMICAL APPROACH**
**This program reduces legal costs for everyone"**

**Defendant's Exhibit B, page 4.**

**As discussed below, when compared with the free enforcement procedures of the Department of Labor, the $35 filing fee in Small Claims Court, or the contingency fee arrangement that Mr. Pomposi has with the undersigned, Defendant's procedure, which requires Plaintiff to pay a $125 filing fee is *more* expensive, not less. Defendant will not be able to show that this bold statement is true.**

**d. Defendant misleadingly asserts that its program is "user-friendly"**

**Defendant was misleading and deceptive when it stated, in its brochure:**

> **"Gamestop C.A.R.E.S. is designed as a *user-friendly* way to resolve disputes with all of the remedies of litigation, but without the delays and costs."**

**Defendant's Exhibit B, page 4.**

**This language suggests that it is easier to use GameStop's arbitration program than it is to use than those forums that it replaces. In fact, a review of the program's procedures demonstrates the falseness and deceptiveness of this statement. As discussed above, the procedures required are as complicated as those found in this Court. In fact, the Federal Rules of Civil Procedure and the Federal Rules of Evidence apply. There are also procedures for pleadings, discovery, motions, objections, hearings, and post-hearing briefs.**

**But for this arbitration policy, employees would have two far more simple forums in which to adjudicate their claims. First, Connecticut employees may file a Statement of Claim for Wages with the Connecticut Department of Labor. See Plaintiff's Exhibit C. All of Defendant's Store Managers may file a claim with the U.S. Department of Labor. There are no filing fees, no rules of procedure and no rules of evidence in these forums. Second, Connecticut employees may file a law suit in Small Claims Court for amounts up to $5000. The filing fee is presently $35. Furthermore, in that court "[a]ll proceedings shall be simple and informal." Connecticut Practice Book § 24-1(b). Hearing Procedures are conducted "in such order and form and with such methods of proof as [the judicial authority] deems best suited to discover the facts and to determine the justice of the case in**

**accordance with substantive law." Connecticut Practice Book § 24-23.**

**According to Defendant's program, the simple act of commencing an arbitration is complex and misleading. The "NOTICE OF INTENT TO ARBITRATE" instructs an employee to "[m]ail this form to the local AAA Case Management Center and one copy to GameStop C.A.R.E.S. ERO 625 Westport Parkway, Grapevine Texas 76051. Defendant's Exhibit A, page 17. It should not go unnoticed that neither the rules nor the forms provide the address to mail the notice to. Instead, the employee must find that address by accessing a web site. Of course, employees without internet access might find this difficult. Further, on the page that this web site brings you to, you are lead to believe that the local Case Management Center is located in Boston, MA. See Plaintiff's Exhibit D, page 1. The actual local Case Management Center for Connecticut is located in East Providence, RI. See Plaintiff's Exhibit D, page 3. The page containing the information needed required deeper analysis of the information contained on the AAA website. This procedure is far too complex. The undersigned is at a loss to find one aspect of this program that is user-friendly.**

**2. The purported arbitration agreement including the alleged waiver of collective actions is substantively unconscionable**

**"The element of oppression has been termed substantive unconscionability and is implicated by overly harsh contract terms."** ***Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc.,*** **31 Conn.App. 455, 463 n.12, 626 A.2d 307 (1993). Several components of Defendant's program render it substantively unconscionable.**

***i. Defendant's program includes a waiver of collective action***

**Defendant's program includes an express waiver of Plaintiff's right to proceed with a collective action, participate as a member of a collective action, or even to receive a recovery from a collective or representative action. This draconian procedure is substantively unconscionable.**

**Defendant's prohibition on initiating a collective action as a representative is unconscionable. As discussed in detail above in the section on statutory rights and public policy, employees have been given an important legal right to initiate collective actions in order to take advantage of the pooling of costs. *Hoffman-LaRoche* at 170. Attempted waivers of these rights have been strictly scrutinized by the courts. *See, e.g., Ingle* at 1175 (holding bar on class-wide arbitration to be patently one-sided and substantively unconscionable); *Skirchak*, 432 F.Supp.2d at 175 ("Requiring employees prospectively to waive their statutory rights to sue in order to obtain or maintain their employment is utterly inconsistent with the FLSA's purpose of protecting the class of employees that possesses the least bargaining power in the workforce: "the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945).**

**Defendant's prohibition on participating in a collective action as a "member" is unconscionable and renders its Program unenforceable. One of the important purposes of the collective action mechanism is to confer upon the class members the benefits that the class representative has**

**obtained by finding an attorney who advised them of their rights and is willing to take on the case. *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (citation omitted). It is important to note that it is not just this plaintiff's rights that are at issue. Defendant's procedure extinguishes the rights of those Store Managers who would join this action. Congress' purpose is thwarted by Defendant's program, which prohibits employees, including Store Managers whose rights Plaintiff wishes to vindicate through this action, from joining any collective action that Plaintiff may initiate. The benefit that Congress intended to confer upon putative class members, that is, allowing them to learn their rights and join a cost effective lawsuit designed to enforce those rights, will be lost.**

**Defendant's prohibition against being "entitled to a recovery from a class, collective or representative action" is unconscionable. The FLSA includes a provision which authorizes the Secretary of Labor to initiate and maintain collective actions on behalf of employees protected by the Act. 29 U.S.C. § 216(c). Examples in this Circuit have included *Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281 (E.D.N.Y. 2002) (*aff'd as modified*); *Reich v. Sherer Buick Co.*, 887 F.Supp. 1142 (C.D. Ill. 1995); *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997); *Reich v. State of N.Y.*, 3 F.3d 581 (2d Cir. 1993). When those actions are successful,**

**employees recover overtime wages that they had earned.**

**Defendant's procedure extinguishes an employee's right to recover any and all such compensation obtained by the Secretary of Labor. The extent to which this provision extinguishes the Secretary of Labor's effectiveness in enforcing this law is truly outrageous and unenforceable. "To the extent the Court of Appeals construed an employee's agreement to submit his claims to an arbitral forum as a waiver of the substantive statutory prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit, the court obscured this crucial distinction and ran afoul of our precedent."** ***EEOC v. Waffle House, Inc.*****, 534 U.S. 279 (2002) (refusing to enforce an arbitration agreement and denying a motion to compel arbitration because the EEOC's right to bring enforcement actions, including those for victim-specific relief outweighs the policies behind the FAA).**

**In effect, Defendant's procedure prohibits an employee from initiating a collective action, from joining a collective action as a member, and, most egregiously, from accepting recovery from a successful action,** ***even one brought by the Secretary of Labor*****! Such a procedure is so one-sided as to "shock the conscience."** ***Ingle*** **at 1173.**

***ii. Defendant's program shortens the limitations period of covered claims***

**Defendant's program truncates the limitations period for Plaintiff's legal claims. The procedures require that an "INTERNAL REVIEW REQUEST FORM" must be filed within the period "allowed by law**

**applicable to the Covered Claim at issue." Defendant's Exhibit A, page 5. Next, its "NOTICE OF INTENT TO ARBITRATE" must be filed within either thirty days from the date of the decision at the internal review step "or within sixty (60) days of submitting the request for internal review if no decision is received." Defendant's Exhibit A, page 7.**

**The FLSA allows claims for unpaid overtime wages to be filed in court within two years of the date of the violation. A third year is added for willful violations. 29 U.S.C. § 255(a). Defendant's procedure shortens this to sixty days following the filing of its internal review request form. It cannot be credibly argued that the filing of an internal review request form is an accurate surrogate for initiating a legal claim. The more accurate parallel to a law suit is the notice of intent to arbitrate. It is this form that operates like a law suit since it must be filed with AAA and accompanied by a filing fee.**

**Defendant has injected a procedure which induces employees to raise issues internally while simultaneously punishing them by drastically shortening their limitations period. Any program that interferes with a statute of limitations is unconscionable. *See, e.g., Ingle* at 1175 (holding employer modification to state statute of limitations substantively unconscionable); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (same); *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 266-67 (3rd Cir. 2003) (criticizing statute of limitations provision and holding agreement as a whole unenforceable).**

***iii. Defendant's program does not apply to Defendant***

**Because this program applies to claims by employees and *not* claims by Defendant, it is substantively unconscionable. The program clearly and unequivocally defines "Covered Claims" as follows:**

> **"A Covered Claim is any claim…*brought by an existing or former employee or job applicant…*"**

**Defendant's Exhibit A, page. 3.**

**This language means that claims brought by Defendant are not subject to this program. The one-sidedness of arbitration agreements has been held to relevant to an unconscionability analysis. *Ingle v. Circuit City Stores Inc.*, 328 F.3d 1165, 1173-1175 (9th Cir. 2003) (holding arbitration agreement substantively unconscionable because it did not apply to the employer); *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 384 (S.D.N.Y. 2002) ("The EDRP is substantively unconscionable because its terms unreasonably favor Bally") (citing the Second Circuit in *Desiderio v. National Ass'n of Securities Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999)).**

***iv. Defendant's program extinguishes Plaintiff's right to bring a claim at the Department of Labor***

**Defendant's program indicates again and again that it is the "*sole method* used to resolve any Covered Claim." Defendant's Exhibit A, page 2. It also indicates that this procedure is either "*mandatory*" or "*must*" be used nine times throughout the document.**

**Accordingly, it forecloses Plaintiff's right to file a claim with the Connecticut Department of Labor or the U.S. Department of Labor for**

**unpaid wages. See Plaintiff's Exhibit C, "Statement of Claim for Wages" and "Instructions". This procedure, which is frequently used by persons having small claims of unpaid wages, is free. Furthermore, individual claims like this frequently result in broader investigations by the Department of Labor. Such a component of an employer-mandated arbitration agreement is void. *See EEOC v. Waffle House, Inc.*, 534 U.S. 219 (2002) (holding that an employer cannot preclude a public enforcement agency from bringing an enforcement action for employee-specific relief by relying on an employer-employee arbitration agreement).[14]**

**By its plain language, this document prohibits the filing of a claim for wages with either the Connecticut or United States Departments of Labor, and it unconscionable in that regard.**

***v. Defendant's program imposes prohibitive fees and costs***

**Defendant's program, with its mandatory filing fee of $125, and its prohibition on filing claims with the Department of Labor or Small Claims Court imposes costs which interfere with an employee's opportunity to adjudicate his rights. Defendant's program requires that its notice of intent to arbitrate be accompanied by "a check made payable to the AAA in the**

**[14] While the program indicates that charges may be filed with a "state, local or federal administrative agency, such as the Equal Employment Opportunity Commission," nothing in the document expressly permits a claim to be filed with the Department of Labor. In fact, when read as a whole, the indicated language would be interpreted by a reasonable person to refer only to the EEOC and "equivalent state agencies" such as the Connecticut Commission on Human Rights and Opportunities. Defendant's Exhibit A, page 6. Importantly, neither the EEOC, nor "equivalent state agenc[ies]" have the power to adjudicate claims for unpaid wages under the FLSA. It is particularly insidious of Defendant to use the EEOC as its sample administrative agency, rather than the Department of Labor when it is FLSA collective actions for overtime wages which had been brought against it in the past which it seeks to avoid going forward by this alleged waiver. See Section IV(B)(3).**

**amount of $125 (your share of the arbitration service cost)…" Defendant's Exhibit A, page 6. No provision is made in the rules for a waiver of this fee.**

**As discussed above, employees in Connecticut who have claims for unpaid wages have the right to file a Statement of Claim for Wages with the Connecticut Department of Labor. No filing fee is required for this procedure. Alternatively, employees in Connecticut may bring law suits for up to $5000 in Small Claims Court, which has a filing fee of $35. Finally, this Court itself has a provision that permits filing fees to be waived under some circumstances, including indigence.**

**In this case, Mr. Pomposi was in need of such inexpensive justice. At the time he hired the undersigned, in November 2008, he was unemployed and Defendant had successfully defeated his claim for unemployment. Presently, he earns Connecticut's minimum wage. He is exactly the category of claimant that these procedures were designed to protect. The filing fee provisions of the GameStop C.A.R.E.S. program are substantively unconscionable and should be rejected by this Court. *See, e.g., Ingle* at 1177 ("Without such a provision for waiver in cases of indigence, employees in that category might well find it prohibitively expensive to pay seventy-five dollars to file a complaint"). Here, the filing fee of $125 is even more burdensome to a potential claimant. Coupled with the program's insistence that it is the sole mechanism, it effectively discourages employees from bringing claims for unpaid wages, especially when the amounts due are relatively small. In fact, many claims, such as a**

**claim for a single week of overtime, could be for as little as $100.[15] It was precisely these types of claims that were intended to be brought under collective actions.**

***vi. Defendant's program is unilaterally modifiable and terminable***

**Defendant's program is substantively unconscionable in that it is unilaterally modifiable and terminable by Defendant. Defendant's program provides: "GameStop may from time to time modify or discontinue GameStop C.A.R.E.S. by giving covered employees thirty (30) calendar days notice;…" Defendant's Exhibit A, page. 4.**

**As the Ninth Circuit discussed in *Ingle*, "[a]lthough the agreement requires [GameStop] to provide exiguous notice to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement…Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement." *Ingle* at 1179. The Ninth Circuit went on to find the unilateral power of termination or modification unconscionable.**

**It is also important to note that the agreement in *Ingle* provided clarification for what sort of notification was required by the employer to unilaterally modify or terminate the agreement. *Id* at n. 21. There is no such clarity in GameStop's program. It is unclear as to what form the**

**[15] For example, at Mr. Pomposi's pay rate and his assumption of five hours of overtime per week, a claim for one week of overtime would be $112.50. This fee provision effectively extinguishes such a claim.**

**notice will be, whether it will require a signature, and what the consideration will be, if any.**

**Agreements containing unilateral modification/termination clauses have been heavily criticized by Circuits around the country. *See, e.g., Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219-20 (10th Cir. 2002) ("allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (holding illusory an arbitration contract in which employer was not required to receive consent from the employee); *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (criticizing arbitration agreement with unilateral modification and termination clause); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997) (same).**

**Defendant's program robs Plaintiff and similarly situated employees of any meaningful negotiation with respect not only to the initial agreement, but with any modifications. For these reasons, the program is substantively unconscionable.**

## V. CONCLUSION

**The importance of denying Defendant's motion and refusing to ratify its deceptive and illegal policy is hard to overstate. Defendant, in reaction to two separate suits for overtime brought by other Store Managers, has created a misleading set of documents with the sole purpose of avoiding class liability for the illegal classification of its Store Managers as exempt**

**from the overtime requirements of the FLSA. It claims that this "arbitration agreement" is enforceable under the strong public policy in favor of arbitration. The issue, however, is whether or not it should be allowed to enforce its waiver of its Store Managers' right to proceed collectively against it.**

**It should not.**

**The document which contained the waiver was never agreed to by Plaintiff or even signed by Plaintiff at all. Further, the document that Plaintiff actually signed contradicts the waiver by indicating that collective actions are "included" in the program. Defendant was deceptive in its implementation of its new "GameStopC.A.R.E.S" program, distributing it to its Store Managers in Las Vegas and providing only a few days to read. Its acceptance procedure did not include a straight forward signature indicating clearly what the Store Manager was signing, but instead, obtaining their agreement by their return to work after the trip to Las Vegas! On its face, the program is one-sided, misleading, and did not confer any benefit at all upon its Store Managers. To the contrary, it deprives them of their right to the simple and inexpensive procedures available to enforce their claims and replaces them with the complex arbitration procedures which include the FRCP and the Federal Rules of Evidence. More importantly, it deprives them of the "advantages" of the collective action process as provided by Congress and ratified by the U.S. Supreme Court.**

**If this procedure is ratified by this court, employers elsewhere in Connecticut and the Second Circuit will follow suit. When that happens, collective actions as we know them, will disappear. Defendant's Motion to Dismiss must be denied.**

**PLAINTIFF, Justin Pomposi**

**By: _/s/Richard E. Hayber__**
**Richard E. Hayber,**
**Fed. Bar No: ct11629**
**Hayber Law Firm, LLC**
**221 Main Street, Suite 502**
**Hartford, CT 06106**
**(860) 522-8888**
**(860) 218-9555 (facsimile)**
**rhayber@hayberlawfirm.com**
**Attorney for Plaintiff**

**CERTIFICATION OF SERVICE**

**I hereby certify that on June 12, 2009, a copy of Plaintiff's Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint Or, In The Alternative, To Stay Proceedings And Compel Arbitration dated June 12, 2009 was filed electronically [and service made by mail to anyone unable to accept electronic filing]. Notice of this filing will be sent by email to all parties by operation of the Courts electronic filing system [or by mail for anyone unable to accept electronic filing]. Parties may access this filing through the Courts system.**

______/s/Richard E. Hayber______________
**Richard E. Hayber**