# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Justin Pomposi, individually and on behalf of other similarly situated individuals,<br><br>    **Plaintiff,**<br><br> -against-<br><br>GameStop, Inc.,<br><br>    **Defendant.** | CIVIL ACTION NO.<br>3:09-CV-00340 (VLB)<br><br><br><br><br><br>July 6, 2009 |

## DEFENDANT GAMESTOP, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    ANY DOUBTS SHOULD BE RESOLVED IN FAVOR OF ARBITRATION ........ 1

III.   PLAINTIFF AGREED TO ARBITRATE ................................................. 2

IV.   THE COLLECTIVE ACTION WAIVER IS ENFORCEABLE ............................ 7

      A.    At Least Four Circuit Courts And Numerous District Courts Have Held That FLSA Collective Action Waivers Are Enforceable. ................................................................................. 7

      B.    Cases Addressing Class Action Waivers and the "Vindication of Rights" Doctrine Are Inapposite. ................................................... 10

V.    PLAINTIFF'S LAUNDRY LIST OF UNCONSCIONABILITY ARGUMENTS IS BASELESS. ........................................................... 16

      A.    C.A.R.E.S. Is Bilateral and Applies Equally to GameStop and Employees. ................................................................................. 16

      B.    C.A.R.E.S. Does Not Impose Prohibitive Filing Fees ......................... 16

      C.    Plaintiff Is Not Eligible for Small Claims Court ................................. 17

      D.    C.A.R.E.S. Permits Claims Before the Department of Labor ............. 18

      E.    Plaintiff Is Not Waiving Any Substantive Rights ............................... 18

      F.    The Collective Action Waiver Is Not Hidden or Deceptive ............... 19

      G.    Plaintiff May Not Avoid Arbitration Based On Unequal Bargaining Power. ....................................................................... 20

      H.    Arbitration Is Empirically Faster Than Court Proceedings ............... 22

      I.    C.A.R.E.S. Does Not Shorten The Statute of Limitations ................. 23

      J.    C.A.R.E.S. Provides for Prospective Modification Only After Thirty Days Notice. ..................................................................... 24

VI.   CONCLUSION ................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

**Page**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. -- (2009) .......................................... 23

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002)...................................... 7, 8

*Adler v. Dell, Inc.*, No. 08-CV-13170, 2009 WL 646885 (E.D. Mich. Mar. 10, 2009) .................................................................................................. 13, 14

*Aneja v. Triborough Bridge and Tunnel Authority*, 35 Fed. Appx. 19, 2002 WL 1041037 (2d Cir. 2002) ........................................................ 15

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)........................................................................................ 17

*Asp v. Milardo Photography, Inc.*, D. Conn No. 3:04-cv-01016-DJS........................ 15

*Beit v. Beit*, 135 Conn. 195, 63 A.2d 161 (1948).......................................... 16

*Bilyou v. Dutchess Beer Distributing, Inc.*, 300 F.3d 217 (2d Cir. 2002) ................ 15

*Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744 (D. Colo. Apr. 20, 2009)...................................... 13, 14

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) ........... 7, 8, 13

*Capone v. Electric Boat Corp.*, No. 3:06-cv-1248JCH, 2007 WL 1520112 (D. Conn. May 18, 2007)............................................... 3, 5, 6, 21, 23

*Carter v. Countrywide Credit Industrial, Inc.*, 362 F.3d 294 (5th Cir. 2004)... 7, 18, 19

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) ................................ 11, 12, 13

*Duncan v. Office Depot*, 973 F. Supp. 1171 (D. Or. 1997)......................................... 25

*EEOC v. Waffle House*, 534 U.S. 279 (2002) ................................................ 18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................ 11

*Ellerbee v. GameStop*, 604 F. Supp. 2d 349 (D. Mass. 2009) ........... 3, 6, 9, 19, 21, 22

*Estanislau v. Manchester Developers, LLC*, No. 3:02CV1515 (PCD), 2003 WL 23152967 (D. Conn. Dec. 23, 2003)............................................... 15

*Fahim v. CIGNA Investment, Inc.*, 1998 WL 1967944 (D. Conn. 1998)............. 5, 7, 25

*Faye v. High's of Baltimore*, 541 F. Supp. 2d 752 (D. Md. 2008) ................................ 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Filloramo v. Newalliance Inv., Inc.*, No. 3:06-cv-01825 (AVC), 2007 WL 1206736 (D. Conn. Apr. 23, 2007) .................................................................. 5

*G-I Holdings, Inc. v. Baron & Budd*, 218 F.R.D. 409 (S.D.N.Y. 2003) ......................... 4

*Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997).......... 24

*Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360 (E.D. Pa. Mar. 29, 2001)............................................................... 8

*Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158 (2d Cir. 2008)......................... 15

*Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999).................................... 24

*Horenstein v. Mortgage Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001) ........... 7, 8

*In re: American Express Merchandise Litigation*, 554 F.3d 300 (2d Cir. 2009) .................................................................. 10, 11, 14

*Jackson v. Jean Coutu Group (PJC) USA, Inc.*, No. CV-206-194, 2007 WL 1850710 (S.D. Ga. June 26, 2007) .................................................................. 14

*Klos v. Lotnicze*, 133 F.3d 164 (2d Cir. 1997) ............................................................ 20

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006)................................. 11, 13, 14

*Lynn's Food Stores v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ..................................... 19

*Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36 (D.D.C. 2008) ........................................ 25

*McCluskey v. J.P. McHale Pest Management, Inc.*, 147 Fed. Appx. 203, 2005 WL 1866384 (2d Cir. 2005) .................................................................. 15

*Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Ct. App. 1999)............................. 11, 12

*Reyes v. Texas Ezpawn, L.P.*, No. V-03-128, 2007 WL 3143315 (S.D. Tex Oct. 24, 2007) .................................................................................................... 14

*Sidell v. Structured Settlement Investments*, No. 3:08-cv-00710, 2009 WL 103518 (D. Conn. Jan. 14, 2009) .................................................................. 2

*Skirchak v. Dynamic Research Corp.*, 508 F.3d 49 (1st Cir. 2007) ......................... 8, 9

*Smith v. Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 721 A.2d 1187 (1998)........................................................................................................ 21

*Stokes v. Norwich Taxi, LLC*, 289 Conn. 465, 958 A.2d 1195 (Conn. 2008) ........... 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Tammone v. Dorr-Oliver Inc.*, 84 F. Supp. 2d 291 (D. Conn. 1999) ......................... 15

*Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 802 A.2d 731 (2002) ......................................................................................................... 21

*Ting v. AT&T*, 182 F. Supp. 2d 902 (N.D. Cal. 2003) ................................................ 11

*Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 662 A.2d 89 (1995) ...................................................................................................................... 4, 5

*Xerox Corp. v. Media Sci., Inc.*, 609 F. Supp. 2d 319 (S.D.N.Y. 2009) ............... 13, 14

**FEDERAL STATUTES**

29 U.S.C. § 216 ........................................................................................................ 13, 18

## I.      INTRODUCTION

In its opening brief, Defendant GameStop, Inc. ("GameStop") demonstrated that Plaintiff entered into a valid agreement to arbitrate, that the Federal Arbitration Act ("FAA") mandates arbitration when there is a valid agreement to arbitrate, and that the District of Connecticut routinely enforces employment arbitration agreements like the one at issue here.  As explained below, nothing Plaintiff says in his opposition allows him to avoid his agreement to arbitrate. Indeed, Plaintiff argues that he did not agree to arbitrate because continued employment can never be considered sufficient evidence of assent in an employment contract.  But the case Plaintiff cites for this sweeping proposition does not support the proposition.  Not only has the District of Connecticut repeatedly ruled that continued employment is sufficient assent to an employment arbitration agreement, but Plaintiff here also signed an acknowledgment "agreeing that all workplace disputes or claims…will be resolved under the GameStop C.A.R.E.S. [arbitration] program rather than in court."  As for his claim that the right to bring a collective action under the Fair Labor Standards Act is "non-waivable," again, he has not and cannot cite the Court to a single case for this proposition, and for good reason.  Courts from around the country, including four Circuit Courts of Appeal, have held that the ability to bring a collective action is a procedural right that can be waived. Finally, Plaintiff's laundry list of unconscionability arguments is based on misstatements of the facts, misstatements of the law, or both.  No matter how many arguments Plaintiff advances, the fact remains that the claims asserted in this action are covered by a valid arbitration agreement.

## II.     ANY DOUBTS SHOULD BE RESOLVED IN FAVOR OF ARBITRATION.

As a threshold matter, GameStop showed in its moving papers that with the exception of the validity of the collective action waiver (which, according to

**ORAL ARGUMENT REQUESTED**

GameStop C.A.R.E.S., is to be decided by the Court), it is for the arbitrator to decide "his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  *See* Mem. at 6-7; *Sidell v. Structured Settlement Investments,* No. 3:08-cv-00710, 2009 WL 103518 at *2 (D. Conn. Jan. 14, 2009) (Bryant, J.) (ordering questions of arbitrability to be decided by arbitrator and noting that such a conclusion is common and routine in this judicial district).  GameStop also established that the FAA embodies the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mem. at 4. Plaintiff ignores these settled principles and asks this Court to invalidate his arbitration agreement because he contends that he did not agree to arbitrate, that collective action waivers are unenforceable, and that the arbitration agreement is unconscionable.  As explained below, Plaintiff's arguments lack merit.

III.   <u>PLAINTIFF AGREED TO ARBITRATE</u>

In its opening papers, GameStop demonstrated that Plaintiff signed the following acknowledgement:

> I acknowledge that I have received a copy of the GameStop Store Manager Handbook, including the GameStop C.A.R.E.S. Rules for Dispute Resolution.  The Rules set forth GameStop's procedures for resolving workplace disputes ending in final and binding arbitration....<u>I understand that by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S. I am agreeing that all workplace disputes or claims, regardless of when those disputes or claims arose, will be resolved under the GameStop C.A.R.E.S. program rather than in court</u>.

Parent Aff. Ex. C. (emphasis added).  In his opposition and supporting affidavit, Plaintiff concedes, as he must, that he received a copy of the C.A.R.E.S. Rules (Parent Aff. Ex. A), he received the accompanying brochure (Parent Aff. Ex. B), and that he *signed* the C.A.R.E.S. Acknowledgement.  Pomposi Aff. ¶¶ 4, 5.  In fact, Plaintiff admits under oath, "[i]t was my understanding from the Acknowledgement and the brochure that GameStop was creating a dispute

**ORAL ARGUMENT REQUESTED**

resolution procedure for any employment disputes or claims."  Pomposi Aff. ¶ 9.

Defying his own admissions, Plaintiff makes a number of desperate arguments to avoid the ramifications of his agreement.  Each is baseless.

First, Plaintiff argues that the "language of the Acknowledgement itself does not indicate that Plaintiff agreed by his signature."  Opp. at 9.  The language of his signed Acknowledgement, however, clearly states that "I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court."  Parent Aff. Ex. C. (emphasis added).  In any event, even if Plaintiff had not signed the Acknowledgement, he still would be bound to arbitrate.  As cited in GameStop's moving papers, cases from this District make clear that under Connecticut law and the FAA, an employee is not required to sign an arbitration agreement for it to be binding.  Mem. at 5-9 *citing Capone v. Elec. Boat Corp.*, No. 3:06-cv-1248JCH, 2007 WL 1520112 at *6 (D. Conn. May 18, 2007) ("a party may be bound by an agreement to arbitrate absent a signature"); *see also Ellerbee v. GameStop*, 604 F. Supp. 2d 349, 354 (D. Mass. 2009) (finding GameStop's C.A.R.E.S. enforceable against employee even when employee *refused* to sign the agreement).

Second, Plaintiff attempts to avoid his arbitration agreement by manufacturing a controversy over whether the effective date was ever "announced."  Opp. at 9.  As stated in the Parent Affidavit, the effective date of C.A.R.E.S. was September 17, 2007.  Parent Aff. ¶ 10.  Plaintiff does not dispute that this was the effective date, nor does he offer any evidence that the effective date was never "announced."  Instead, all Plaintiff can muster, under penalty of perjury, is that he does not "recall being told an 'effective date' of the new procedure."  Pomposi Aff. ¶ 15.  The effective date, however, was "announced" at a mandatory meeting of Store Managers in Las Vegas, Nevada — a meeting that Pomposi admits attending.  Pomposi Aff. ¶ 3; Supp. Parent Decl. ¶¶ 2-4.  During a

mandatory session for Store Managers on September 12, 2007, GameStop announced both verbally and visually through a PowerPoint presentation that the effective date of CARES would be September 17, 2007, and passed out to Store Managers the C.A.R.E.S. Program Rules, the brochure, and Acknowledgement. Supp. Parent Decl. ¶¶ 2-4 and Ex. D.  Plaintiff's acknowledgment of C.A.R.E.S. is also dated September 12, 2007, confirming that he was present at that meeting. Parent Aff. Ex. C; Supp. Parent Decl. ¶ 4.  Given that the effective date of C.A.R.E.S. was announced at this presentation to Store Managers, and all Plaintiff can say at this point is that he does not recall whether he heard the announcement of the effective date, his argument that no effective date was announced is baseless.  The fact that Plaintiff may not "recall" an announcement is not evidence that an announcement was never made, nor is it grounds to invalidate an agreement otherwise executed by Plaintiff without any evidence of fraud or duress.  *See G-I Holdings, Inc. v. Baron & Budd*,  218 F.R.D. 409, 414 (S.D.N.Y. 2003) ("failure to recall," without more, is not evidence).

Third, Plaintiff argues that he did not <u>assent</u> to the arbitration agreement based on a strained interpretation of *Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 18, 662 A.2d 89 (1995).  Plaintiff cites *Torosyan* for the proposition that continued employment "can <u>never</u> be considered sufficient evidence of assent in an employment contract."  Opp. at 10 (emphasis added). *Torosyan* does not stand for this proposition.  In *Torosyan*, the employee had an unwritten employment contract under which he could only be discharged for cause.  234 Conn. at 8-9.  The employer then issued a new employee manual that unilaterally changed his employment status to at-will.  *Id.*  The employer argued that the employee's continued work after issuance of the new employee manual, which the employee never acknowledged, constituted implied consent to his new at-will status.  *Id.* at 11-12.  Rejecting this argument, the Connecticut Supreme

**ORAL ARGUMENT REQUESTED**

Court wrote:

> If we were to accept the defendant's argument to the contrary, an employee whose preexisting contract provided that his or her employment could be terminated only for cause would have no way to insist on those contractual rights.  The employee's only choices would be to resign or to continue working, either of which would result in the loss of the very right at issue-- that is, the loss of the right to retain employment until terminated for cause.

*Id.* at 19.  The facts here are clearly distinguishable from those in *Torosyan*.  Here, Plaintiff makes no such claim that he has a contractual right to be discharged only for cause.  Plaintiff was employed at-will and acknowledged that fact in writing.  Parent Aff. Ex. C ("I understand that my employment with GameStop is 'at will'").  As such, continued employment is sufficient assent for an arbitration agreement.  *See Fahim v. CIGNA Inv., Inc.*, 1998 WL 1967944 (D. Conn. 1998) (distinguishing *Torosyan* where the employee is at-will and enforcing arbitration policy accepted by continued employment).  Indeed, since *Torosyan*, the District of Connecticut has repeatedly held that "the continuation of employment shall be deemed acceptance of the terms and conditions of [an arbitration] Policy." *Capone,* 2007 WL 1520112 at *1; *see also Filloramo v. Newalliance Inv., Inc.*, No. 3:06-cv-01825 (AVC), 2007 WL 1206736 (D. Conn.  Apr. 23, 2007).  Furthermore, while Plaintiff would have this Court believe that the *Torosyan* court held that continued employment can "never" be considered evidence of assent, the Supreme Court said no such thing:  "The fact that an employee continues working, therefore, <u>may</u> <u>be</u> <u>relevant</u> to determining whether he or she consented to the new contract, but cannot <u>itself</u> mandate a finding of consent."  *Id.* at 19 (emphasis added).  Unlike *Torosyan*, however, Plaintiff's continued employment was not "itself" the sole manifestation of assent to C.A.R.E.S.; Plaintiff also signed an Acknowledgement agreeing to resolve claims under C.A.R.E.S., a document he <u>admits</u> he signed and understood. Pomposi Aff. ¶¶ 4, 9.

The last argument Plaintiff advances for why he did not enter into a valid

arbitration agreement is that the agreement is not supported by sufficient consideration.  Opp. at 12-13.  Plaintiff argues that continued employment is not sufficient consideration and that the "[C.A.R.E.S.] Rules impose no obligation on Defendant."  *Id.* at 12.  Plaintiff is wrong on both points.

As the District Court found in *Ellerbee*, which analyzed the very same arbitration agreement at issue here, "Plaintiff's continued employment constitutes adequate consideration for the contract."  *Ellerbee*, 604 F. Supp. at 354.  Plaintiff makes no attempt to distinguish *Ellerbee*, or cite any authority demonstrating that Connecticut courts applying Connecticut law treat "consideration" in employment arbitration agreements any differently than in Massachusetts.  This is not surprising because, in Connecticut, "where an individual's employment is at will, continued employment is sufficient consideration to render an arbitration agreement binding."  *Capone*, 2007 WL 1520112 at *6.

Plaintiff's contention that the "Rules impose no obligation on Defendant" also is wrong.  Opp. at 12.  Plaintiff argues that "the only claims subject to arbitration are claims 'brought by an existing or former employee or job applicant.'"  *Id.*  But C.A.R.E.S is crystal clear that it is "a mutual agreement to arbitrate" and that the "Company must initiate the arbitration process if it has a Covered Claim against an employee."  Parent Aff. Ex. A at 2, 7.  Plaintiff not only ignores this plain language, but he also misreads the definition of a Covered Claim in arguing that only claims "brought by an existing or former employee or job applicant" are subject to arbitration.  *See* Opp. at 12.  "Covered Claims" are defined as follows:

> Arbitration applies to any 'Covered Claim' whether arising before or after the Effective Date of the Rules.  A Covered Claim is any claim asserting the violation or infringement of a legally protected right, <u>whether</u> based on statutory or common law, brought by an existing or former employee or job applicant, arising out of or in any way relating to the employee's

**ORAL ARGUMENT REQUESTED**

employment, the terms and conditions of employment, <u>or</u> an application for employment, including the denial of employment, <u>unless specifically excluded</u> as noted in "What is Not a Covered Claim Below…

Parent Aff. Ex. A at 3 (emphasis added).  Thus, all claims are included as a "Covered Claim" <u>unless excluded,</u> and claims by GameStop against employees are <u>not excluded.</u>  Under C.A.R.E.S., a "Covered Claim" is "any claim" asserting a violation of or infringement of a legally protected right, <u>including</u> claims "brought by an existing or former employee or job applicant."  Plaintiff reads the word "whether" completely out of context in the language quoted above, a word that obviously is synonymous with "including."[1]

The undisputed facts are that Plaintiff "under[stood] from the Acknowledgement and the brochure that GameStop was creating a dispute resolution procedure for any employment disputes or claims" (Pomposi Aff. ¶ 9), and that he signed the Acknowledgement with that understanding.  He, thus, entered into a valid agreement to arbitrate.

IV.    <u>THE COLLECTIVE ACTION WAIVER IS ENFORCEABLE</u>

A.    <u>At Least Four Circuit Courts And Numerous District Courts Have Held That FLSA Collective Action Waivers Are Enforceable.</u>

In its moving papers, GameStop cited a <u>uniform</u> body of law holding that FLSA collective action waivers are enforceable.  Mem. at 7 & fn. 4.  In fact, among that body of law, <u>four</u> Courts of Appeal have upheld such waivers.  *See, e.g., Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Horenstein v. Mortgage Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001); *Caley v. Gulfstream*

---

[1]  Even if GameStop were obligated to arbitrate only claims brought by employees, that would not render the agreement invalid because GameStop, among many other obligations, is obligated to arbitrate <u>all</u> covered claims, obligated to pay all arbitration fees in excess of $125, and is obligated to be bound by any arbitration award.  Parent Aff., Ex. A at 2-4, 6-7; *see Fahim*, 1998 WL at *3 (employer's commitment to arbitrate claims it has against an employee is irrelevant; consideration is provided by the employee's continued employment or the employer's agreement to be bound by the arbitration decision).

**ORAL ARGUMENT REQUESTED**

*Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005).  These courts have reached this uniform result because the ability to bring a collective action – a unique procedural creature of the FLSA – is not a substantive right and because nothing in the FLSA prohibits parties from agreeing to resolve FLSA disputes through arbitration.  *E.g., Adkins*, 303 F.3d at 503 (finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute"); *Caley,* 428 F.3d at 1378 ("the fact that certain litigation devices may not be available in an arbitration is part and parcel of abitration's ability to offer 'simplicity, informality, and expedition'"); *Carter,* 362 F.3d at 298 (waiver of right to proceed collectively does not deprive plaintiffs of substantive rights under the FLSA); *Horenstein*, 9 Fed. Appx. at 619 ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute"); *Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360 at *4 (E.D. Pa. Mar. 29, 2001).

Ignoring what four federal appellate courts and district courts from around the country have said, Plaintiff boldly tells this Court that "rights under the FLSA are non-waivable, even if the waiver is made knowingly and voluntarily."  Opp. at 20.  Of course, Plaintiff does not cite a <u>single</u> case that stands for the proposition that the right to bring a collective action is non-waivable.  In fact, the only FLSA decision Plaintiff cites to support this argument, *Skirchak v. Dynamic Research Corp.*, 508 F.3d 49 (1st Cir. 2007), expressly states that the court did not address the issue.  *Id.* at 52 ("Our ruling is narrow.  We do not reach the argument that waivers of class actions themselves violate either the FLSA or public policy.").

In *Skirchak,* the employer sent a five-line email announcing a new arbitration program that "expands upon" and "enhances" its former policy.  *Id.* at 53.  The emails contained a series of attachments, including a fifteen-page

**ORAL ARGUMENT REQUESTED**

program description and three appendixes, totaling over 33 pages.  As the court found, "[a]n employee who read only the email, the descriptive memorandum and the fifteen-page Program description would not know of the class action waiver." *Id.*  In addition, the provisions of the policy were inconsistent and ambiguous, such that the court concluded, "[a] reader who read all of the attachments would likely still be confused because of the tension between the wording of several clauses and documents."  *Id.* at 54.  In upholding the district court's decision not to enforce the arbitration agreement, the First Circuit concluded that the specific facts before the Court constituted a "combination of a series of events" that led to the conclusion that "[t]he effect was to hide the waiver."  *Id.* at 60.

Such a combination of events is not present here.  As the court specifically found in *Ellerbee*, applying the same Massachusetts law used in *Skirchak,* the specific facts that precluded enforcement of the collective action waiver in *Skirchak* are not present in GameStop's C.A.R.E.S.   *Ellerbee,* 604 F. Supp. 2d at 355-56.  As the *Ellerbee* court noted, the collective action waiver in *Skirchak* "was obscure and buried within an extensive policy document."  *Id.* at 356.  In contrast, the collective action waiver is located on page 2 of the C.A.R.E.S. Rules, and is printed in all caps type.  Parent Aff. Ex. A at 2.  It is not buried within a sea of small print or located in a separate document.  As the court concluded in *Ellerbee*:

> To summarize, the [C.A.R.E.S.] arbitration agreement was not unconscionable under Massachusetts law since the Rules document stated it covered arbitration, set forth the procedures from the first page and <u>contained a waiver in the second</u>, and clearly set forth provisions that were not obscure or hidden from Plaintiff.

*Ellerbee*, 604 F. Supp. 2d at 356 (emphasis added).  The District of Massachusetts found *Skirchak to* be "unpersuasive" as applied to GameStop's C.A.R.E.S. and so should this Court.

**ORAL ARGUMENT REQUESTED**

### B.    Cases Addressing *Class* Action Waivers and the "Vindication of Rights" Doctrine Are Inapposite.

Unable to cite any FLSA cases for his assertion that the right to bring a collective action is non-waivable, Plaintiff resorts to citing cases addressing <u>class</u> <u>action</u> waivers under Rule 23 in <u>consumer</u> disputes. Those cases are not applicable to the FLSA collective action waiver at issue here.

Plaintiff contends that the collective action waiver in C.A.R.E.S. is unenforceable under the "Vindication of Rights" doctrine, a contract defense based on the principle that exculpatory contract provisions that effectively prohibit a party from enforcing their substantive rights should be deemed unenforceable. *In re: American Express Merch. Litig.*, 554 F.3d 300 (2d Cir. 2009). In a matter of first impression for the Second Circuit, *American Express* involved a commercial class action antitrust case (not an employment collective action under the FLSA) brought by credit card merchants. Although the Second Circuit invalidated the class action waiver before it, the Court repeatedly emphasized that its decision did not overrule other cases from this Circuit upholding class action waivers because such cases did not involve facts demonstrating that "an inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all." *Id.* at 302 fn.1. Rather:

> [W]e stress that we do not hold here that class action waivers in arbitration agreements are *per se* unenforceable. We also do not hold that they are *per se* unenforceable in the context of antitrust actions. Rather, we hold that *each* case which presents a question of enforceability of a class action waiver in an arbitration agreement must be considered on its own merits, governed with a healthy regard for the fact that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreement."

*Id.* Taking these factors into consideration renders *American Express* inapposite to C.A.R.E.S.

The plaintiffs in *American Express* provided expert testimony that the median damages under the Clayton Antitrust Act for individual class members

**ORAL ARGUMENT REQUESTED**

was $1,751.  *Id.* at 317.  Plaintiffs also provided undisputed expert testimony that antitrust cases require extensive expert analysis costing on average $300,000 to in excess of $1 million.  *Id.*  Given that expert fees were not recoverable under the Clayton Act, and the fact that the arbitration agreement in question did not provide for the recovery of such expert fees, the Second Circuit concluded that a potential median recovery of $1,751, when compared to millions in unrecoverable expert fees, would effectively preclude individual actions.  *Id.* at 317-18.  Based on these specific facts, the Second Circuit ruled the class action waiver unenforceable because it in effect served "to grant Amex defacto immunity from antitrust liability."  *Id.* at 320.

Relying on this irrelevant precedent, Plaintiff claims that the cost of litigating his FLSA claim will allow employers like GameStop to "engage in unchecked violations of the FLSA."  Opp. at 17.  This contention has no merit.  Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Am. Express*, 554 F.3d at 315.  Plaintiff fails to meet this burden because he provides no evidence of a disparity in potential recovery and the potential fees and costs of the magnitude required by this doctrine.  Plaintiff and his counsel both admit that Plaintiff's amount in controversy is $11,000, and his potential attorney's fees are $45-60,000.  Such facts are a far cry from the million-dollar discrepancy between individual damages and costs in the cases Plaintiff cites.  *See, e.g., In re Am. Express* ($1,751 individual damages); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ($70 individual damages); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1220 (11th Cir. 2007) ($10.56 individual damages); *Kristian v. Comcast Corp.*, 446 F.3d 25, 63 (1st Cir. 2006) (a "few thousand dollars"); *Ting v. AT&T*, 182 F. Supp. 2d 902 (N.D. Cal. 2003) ("insubstantial" damages); *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla. Ct.

**ORAL ARGUMENT REQUESTED**

App. 1999) ($4.50 individual damages).

For example, *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), was not a collective action under the FLSA, but a consumer class action.  The court found a class action waiver unenforceable under the "vindication of rights" analysis because the underlying arbitration agreement barred (1) the recovery of treble damages that are typically recoverable in Clayton Act anti-trust actions; (2) the recovery of attorney's fees and costs; and (3) class arbitration.  *Id.* at 29.   As the court found, the potential individual recovery of a few hundred to a few thousand dollars per claimant was greatly overshadowed by expert fees and attorney's fees that could amount to millions:

> According to the factual information contained in the unopposed expert declarations Plaintiffs submitted to the district court below, each putative class member's estimated recovery-assuming the damage award was trebled pursuant to the applicable antitrust statute-would range from a few hundred dollars to perhaps a few thousand dollars.  By contrast, the expert fees alone are estimated to be in the hundreds of thousands of dollars; and attorney's fees could reach into the millions of dollars.

*Id.* at 54. The other case cited by Plaintiff, *Dale v. Comcast,* actually <u>supports</u> the distinction between consumer class actions and FLSA collective actions.  *Dale* was a consumer class action by cable subscribers against their cable providers.  Over the four-year statute of limitations period, "the subscribers estimate Comcast overcharged them $10.56 in excess fees."  *Dale*, 498 F.3d at 1220.  Like *Kristian*, the arbitration agreement did not permit the recovery of attorneys' fees or expert costs.  *Id.*  As the *Dale* court noted in distinguishing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (where a collective action waiver under the FLSA was enforced), a consumer class action is distinct from an FLSA action because the FLSA collective action in *Caley* was <u>not</u> "a factual scenario in which a remedy was effectively foreclosed because of the negligible amount of recovery when compared to the cost of bringing an arbitration action."

**ORAL ARGUMENT REQUESTED**

As the *Dale* court continued, "a review of the claims in *Caley* shows that each provided for the recovery of attorney's fees and/or expert costs should the plaintiff's prevail." *Id.* at 1221.  Unlike a consumer class action where the individual amount in controversy can be as little as $4.50, these facts all demonstrated that the collective action waiver in *Caley* did <u>not</u> result in "defacto immunity" from the FLSA.[2]

Like the differences between *Dale* and *Caley*, the million-dollar disparity between fees, costs, and potential recovery in such <u>consumer</u> class actions are simply not present in this action under the FLSA.  C.A.R.E.S. does not limit the amount or type of damages recoverable in arbitration and it and the FLSA allow for the recovery of attorneys' fees and costs.  29 U.S.C. § 216(b); Parent Aff. Ex. C at 13 ("If the arbitrator rules in your favor on a claim under which fees and costs can be granted under law, then the arbitrator has the same authority as a judge to award reasonable attorney's fees and other costs to you").

Since its publication, numerous courts have distinguished *American Express* on these very same grounds.  *See, e.g., Xerox Corp. v. Media Sci., Inc.*, 609 F. Supp. 2d 319, 328 (S.D.N.Y. 2009) (distinguishing *American Express* where facts at bar did not demonstrate "de facto immunity from suit"); *Adler v. Dell, Inc.*, No. 08-CV-13170, 2009 WL 646885 at *6 (E.D. Mich. Mar. 10, 2009) (finding *American Express* "factually and/or legally distinguishable" where the claims at bar were "simple consumer fraud claims that are not expensive to litigate and which can easily be prosecuted on an individual basis").  As the District of Colorado recently held in distinguishing *American Express*:

> In *Kristian* and *American Express*, the courts relied on the unique, i.e., complicated and expensive, aspects of antitrust law to support their refusal to enforce the arbitration clauses/class arbitration bars at issue.  In both cases, the plaintiffs had presented evidence that their claims would require

---

[2]  As these distinctions demonstrate, Plaintiff's suggestion that GameStop was not "forthright" by citing *Caley* instead of *Dale* (Opp. at 14 fn. 9) rings hollow.

**ORAL ARGUMENT REQUESTED**

intricate legal analysis and expert testimony that might cost the plaintiffs upwards of one million dollars in expert fees alone.... When the appellate courts weighed this massive initial expense with the relatively small amount of individual monetary damages, both courts concluded that no plaintiff could or would pursue an individual antitrust claim against the defendants.  Thus, under the circumstances of those antitrust cases, the class arbitration bars provided de facto immunity to the defendants.

*Bonanno v. Quizno's Franchise Co.*, LLC, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744 at *15 (D. Colo. Apr. 20, 2009) (concluding that "Plaintiffs' claims involve comparatively simple fraud and consumer protection-type claims.... although Plaintiffs may hire an expert to support their case, the nature of their claims does not require the massive investment of resources that was required in *Kristian* or *American Express*").

Like the plaintiffs in *Xerox Corp., Adler,* and *Bonanno*, Plaintiff has not even come close to meeting his burden under *American Express* to show "an inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all."  *Id.* at 302 fn.1.  Indeed, Plaintiff cannot possibly meet such a burden here.  First, Plaintiffs' counsel routinely represent overtime plaintiffs in individual actions, including specifically in overtime actions brought by retail store managers.  Set forth below are just a tiny fraction of cases that can be found with a simple Westlaw search:

- *Faye v. High's of Baltimore*, 541 F. Supp. 2d 752 (D. Md. 2008) (single plaintiff convenience store manager FLSA OT case).

- *Reyes v. Texas Ezpawn, L.P.*, No. V-03-128, 2007 WL 3143315 (S.D. Tex Oct. 24, 2007) (single plaintiff assistant store manager FLSA OT case).

- *Jackson v. Jean Coutu Group (PJC) USA, Inc.*, No. CV-206-194, 2007 WL 1850710 (S.D. Ga. June 26, 2007) (single plaintiff drug store manager FLSA OT case).

- *Stokes v. Norwich Taxi, LLC*, 289 Conn. 465, 958 A.2d 1195 (Conn. 2008) (awarding single plaintiff taxicab garage manager unpaid overtime, liquidated damages, and double damages of $85,257.90 and $56,026.62 under federal and state statutory provisions, plus $126,414.80 in attorney's fees and costs, and $13,275 for fees and costs in connection with post-trial motions).

-14-          **ORAL ARGUMENT REQUESTED**

- ***Asp v. Milardo Photography, Inc.***, 3:04-cv-01016-DJS (two-plaintiff FLSA case involving OT for photography studio managers—represented by Plaintiff's counsel Hayber).

- ***Havey v. Homebound Mortgage, Inc.***, 547 F.3d 158 (2d Cir. 2008) (single plaintiff FLSA OT case by mortgage underwriter).

- ***McCluskey v. J.P. McHale Pest Mgmt., Inc.***, 147 Fed. Appx. 203, 2005 WL 1866384 (2d Cir. 2005) (single plaintiff FLSA OT case by outside salesperson)

- ***Bilyou v. Dutchess Beer Distrib., Inc.***, 300 F.3d 217 (2d Cir. 2002) (single plaintiff FLSA and state law OT case by delivery route driver)

- ***Aneja v. Triborough Bridge and Tunnel Auth.***, 35 Fed. Appx. 19, 2002 WL 1041037 (2d Cir. 2002) (single plaintiff FLSA OT case by engineer).

- ***Estanislau v. Manchester Developers, LLC***, No. 3:02CV1515 (PCD), 2003 WL 23152967 (D. Conn. Dec. 23, 2003) (single plaintiff FLSA and state law OT claim by property manager).

- ***Tammone v. Dorr-Oliver Inc.***, 84 F. Supp. 2d 291 (D. Conn. 1999) (single plaintiff FLSA OT claim by Field Manager).

Second, unlike the anti-trust claims in *American Express*, expert testimony is not necessary to adjudicate Plaintiff's overtime claims.  No expert is required, or even would be qualified, to determine what Plaintiff's actual daily job duties or hours were, and no expert is required to multiply the number of hours worked over 40, if any, by Plaintiff's overtime rate to arrive at his claimed damages.

Third, Plaintiff's counsel has affirmatively represented to GameStop's counsel that if the collective action waiver is enforced, he would in fact represent Plaintiff individually through the GameStop C.A.R.E.S program.  Shaulson Decl. ¶ 2.  This representation, combined with all of the single plaintiff overtime cases Plaintiff's counsel and other counsel routinely bring, make Plaintiff's conclusory assertion that "Plaintiff would be unable to find an attorney willing to take such a claim" (Opp. at 16) implausible.

FLSA collective action waivers are routinely enforced and upheld on appeal.  The waiver at issue here should similarly be enforced.

**ORAL ARGUMENT REQUESTED**

## V.   PLAINTIFF'S LAUNDRY LIST OF UNCONSCIONABILITY ARGUMENTS IS BASELESS.

In a further effort to invalidate his arbitration agreement, Plaintiff asserts a laundry list of arguments intended to prove that the agreement is unconscionable. As explained, in turn, below, these arguments are based on misstatements of the facts, misstatements of the law, or both.[3]

### A.   C.A.R.E.S. Is Bilateral and Applies Equally to GameStop and Employees.

Plaintiff claims that C.A.R.E.S. is unconscionable because it only applies to claims brought by employees and not to claims brought by GameStop. Opp. at 34. As discussed in Section III above, Plaintiff is wrong; C.A.R.E.S. mandates the arbitration of claims whether they are brought by employees or GameStop.

### B.   C.A.R.E.S. Does Not Impose Prohibitive Filing Fees

Plaintiff's contention that C.A.R.E.S. imposes prohibitive fees and costs is hard to understand. Opp. at 35-37. First, the $125 filing fee to initiate a claim, which is paid to the AAA (not GameStop) is almost three times <u>less</u> than bringing a claim before the District Court, where the filing fee for such a claim is $350. In addition, C.A.R.E.S. provides for the waiver of the filing fee where required by law: "If your state law does not allow for payment of a fee to access arbitration, the fee will be waived." Parent Aff. Ex. A at 6. And if a claimant is successful at arbitration, they are eligible to receive a reimbursement of their arbitration filing

---

[3]  If any of the provisions of C.A.R.E.S. were to be found unenforceable for some reason (other than the collective action waiver), then the Court should sever such provisions but otherwise enforce C.A.R.E.S. pursuant to its severability clause. Parent Aff. Ex. A at 2 ("If any court of competent jurisdiction declares that any part of GameStop C.A.R.E.S., including these Rules, is invalid, illegal or unenforceable (other than as noted for the class action, collective action and representative action waiver above), such declaration will not effect the legality, validity or enforceability of the remaining parts, and each provision of GameStop C.A.R.E.S. will be valid, legal and enforceable to the fullest extent permitted by law."). *See Beit v. Beit*, 135 Conn. 195, 204-05, 63 A.2d 161 (1948) (recognizing court's discretion to modify unenforceable contract terms without invalidating entire agreement).

**ORAL ARGUMENT REQUESTED**

fee.  Parent Aff. Ex. A at 13.   While the fees associated with having AAA arbitrate claims under C.A.R.E.S. is of course higher than the $125 filing fee, "[t]he Company will pay to the AAA the balance of the arbitration fee."  C.A.R.E.S. at 6.

Plaintiff's citation to *Ingle v. Circuit City* does not support his claim that the $125 paid to AAA is a prohibitive fee.  In *Ingle* (which was decided on California state law grounds), the $75 "filing fee" was not paid to the arbitrator (as it is here), but was paid to the employer, Circuit City, "for the privilege of bringing a complaint."  *Id.* at 1177.  This was unconscionable under California law because, in California, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court."  *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 110-11 (2000).  Since the $75 "filing fee" in *Ingle* was not an expense that the employee would have to bear if he brought his claim in court, the Ninth Circuit found it unconscionable under California law.  Here, the $125 paid to AAA is no different than the $350 he paid to bring his claim before this Court.  In addition, the arbitration agreement in *Ingle* did not provide for the waiver of this fee, which C.A.R.E.S. does.  Consequently, the $125 fee is not prohibitive or unconscionable.

C.   Plaintiff Is Not Eligible for Small Claims Court.

Although Plaintiff claims that his arbitration agreement denies him the opportunity to utilize small claims court (Opp. at 27-29), he ignores his own admission that his current claim is ineligible for small claims court because his amount in controversy is greater than $5,000.  Pomposi Aff. ¶ 21.  Moreover, Plaintiff fails to cite a single case that invalidates an arbitration agreement on the grounds that small claims court procedures are unavailable.

**ORAL ARGUMENT REQUESTED**

D.    **C.A.R.E.S. Permits Claims Before the Department of Labor.**

Plaintiff argues that C.A.R.E.S. prohibits a claimant's right to bring a claim before the Department of Labor.  Opp. at 27-29, 34-35.  Again, Plaintiff is wrong. C.A.R.E.S. expressly provides:  "These Rules do not preclude any employee from filing a charge with a state, local or federal administrative agency such as the Equal Employment Opportunity Commission."  C.A.R.E.S. at 2.  As matter of basic contract interpretation, simply because the Department of Labor is not listed as an example does not mean that it is excluded.[4]

E.    **Plaintiff Is Not Waiving Any Substantive Rights.**

Attempting to argue that the FLSA collective action waiver is unconscionable, Plaintiff claims that "waivers or releases of claims for back wages under the FLSA are not enforceable unless they are either 'negotiated or supervised by the Department of Labor; [or] entered as a stipulated judgment in an action brought against [the employer].'"  Opp. at 22 citing to *Lynn's Food Stores v. U.S.,* 679 F.2d 1350 (11th Cir. 1982).  *Lynn's Food*, however, is talking about the waiver of a substantive FLSA violation found by the DOL, *id.* at 1352-53; it is not talking about the ability to waive a collective action, which the courts have universally determined to be a procedural right that can, in fact, be waived. *See* Section IV above.  Here, Plaintiff is free to pursue his substantive FLSA claim but in a different forum – arbitration.  *See e.g., Carter*, 362 F.3d at 298 (waiver of

---

[4]   Plaintiff also claims that C.A.R.E.S. is unconscionable because it allegedly bars the Secretary of Labor from initiating and maintaining "collective actions on behalf of employees protected by the [FLSA]."  Opp. at 31 (emphasis added).  The FLSA, however, does not authorize the Secretary of Labor to bring a "collective action."  29 U.S.C. § 216(c).  Rather, it authorizes the Secretary to bring an action in his or her own right and it expressly states that any collective action is terminated if the Secretary brings an action.  *Id.*  Nothing in C.A.R.E.S. prohibits the Secretary from bringing an enforcement action under the FLSA and recovering damages available under the Statute.  As such, *EEOC v. Waffle House*, 534 U.S. 279, 295 fn.10 (2002), which Plaintiff incorrectly cites as having invalidated an arbitration agreement that prohibits the EEOC from enforcing the Americans With Disabilities Act, has no application.  Opp. at 32-34.

**ORAL ARGUMENT REQUESTED**

right to proceed collectively does not deprive plaintiffs of substantive rights under the FLSA).

**F.      The Collective Action Waiver Is Not Hidden or Deceptive.**

Plaintiff next contends that the collective action waiver "was hidden and contradicted by the acknowledgement form and its brochure."  Opp. at 24-25. This contention lacks merit (as discussed in Section III above), because the collective action waiver is located on page 2 of the Rules, and is printed in all capital letters.  Parent Aff. Ex. A at 2.  As the court held in *Ellerbee*, "the Rules document stated it covered arbitration, set forth the procedures from the first page and <u>contained a waiver in the second</u>, and clearly set forth provisions that were not obscure or hidden from Plaintiff."  *Ellerbee*, 604 F. Supp. 2d at 356 (emphasis added).

Recognizing that the collective action waiver is clear, unambiguous, and set forth in all capital letters, Plaintiff stretches to find a way to claim that the waiver was deceptive.  He argues that the acknowledgment he "actually signed contained language that stated that 'collective action claims in which he might be included … will be resolved under the GameStop C.A.R.E.S. program rather than in court."  Opp. at 25.  But this is not an accurate or complete quote.  What the acknowledgement actually says is that:

> I acknowledge that I have received a copy of the GameStop Store Manager Handbook, including the GameStop C.A.R.E.S. Rules for Dispute Resolution.  The Rules set forth GameStop's procedures for resolving workplace disputes ending in final and binding arbitration....I understand that by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S. I am agreeing that all workplace disputes or claims, regardless of when those disputes or claims arose, will be resolved under the GameStop C.A.R.E.S. program rather than in court.  This includes legal and statutory claims, and class or collective action claims in which I might be included.

Parent Aff. Ex. C.  What this language means is that "all workplace disputes or claims," including statutory claims and including claims Plaintiff has that may be

encompassed by a class or collective action, are subject to the GameStop C.A.R.E.S. Rules.  The Rules, in turn, which Plaintiff acknowledged that he received and reviewed, provide unambiguously that claims are to be resolved on an individual basis and not as collective actions.  Parent Aff. Ex. A at 2.

Plaintiff then points to the GameStop C.A.R.E.S. brochure language that "[t]he arbitrator can award the same remedies as a court," and argues that "no reasonable person reading this document would believe that they were waiving *any* right or procedure that a court could provide."  Opp. at 25.  As an initial matter, the ability to bring a collective action is not a remedy.  Rather, it is a procedural device that can be waived as explained in Section IV above.  Furthermore, Plaintiff expressly acknowledged having received and reviewed the GameStop C.A.R.E.S. Rules and those Rules state in the clearest of terms that "NO COVERED CLAIM MAY BE INITIATED OR MAINTAINED ON A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION BASIS."  Parent Aff. Ex. A. at 2.

### G.   Plaintiff May Not Avoid Arbitration Based On Unequal Bargaining Power.

Plaintiff next attempts to excuse himself from C.A.R.E.S. based on contract of adhesion principles, arguing that C.A.R.E.S. was offered to him on a take-it-or-leave-it basis and that he is young and uneducated.  Opp. at 22-24.  These assertions do not excuse him from his agreement to arbitrate.

In this Circuit, the defense of contract of adhesion "may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability."  *Klos v. Lotnicze*, 133 F.3d 164, 169 (2d Cir. 1997).  "Factors to be considered in determining whether a contract of adhesion is unconscionable include whether the 'coerced' party was on notice of the offending provision,...whether the "coercing" party achieved agreement by fraud or overreaching; and whether any alternatives existed for the 'coerced' party.'"  *Id.*  Plaintiff offers no evidence that he was "coerced" into

**ORAL ARGUMENT REQUESTED**

signing C.A.R.E.S. or that his signature was achieved by fraud.  Plaintiff was an at-will employee at GameStop and, as such, either party was free to end the employment relationship at any time or change the terms of the relationship. *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697-98, 802 A.2d 731 (2002) ("In Connecticut...Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time.")

Moreover, in Connecticut, a contracting party has a duty "to read the terms of an agreement or else be deemed to have notice of the terms."  *Smith v. Mitsubishi Motors Credit of Am., Inc.*, 247 Conn. 342, 352, 721 A.2d 1187 (1998). As the Connecticut Supreme Court held in *Smith*, "procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement."  *Id.* at 352.  In the specific context of employment arbitration agreements, and as explained in Section III above, the District of Connecticut and courts throughout this Circuit and throughout the country have rejected contract of adhesion arguments and have routinely enforced arbitration agreements promulgated by employers to employees with continued employment serving as acceptance.  *See, e.g., Capone,* 2007 WL 1520112 at *6.

With respect to Plaintiff's claim of being young and uneducated, Plaintiff does not demonstrate that his age and education level allowed him to be induced by fraud or coercion.  To the contrary, Plaintiff speaks and writes in English, he graduated from high school, he completed 60 credits of college course work, he acknowledges that he was provided with the GameStop C.A.R.E.S. Rules, and he testifies in his declaration that his "understanding from the Acknowledgement and the brochure that GameStop was creating a dispute resolution procedure for any employment disputes or claims..."  Pomposi Aff. ¶ 9.  As the court concluded in *Ellerbee*, ruling on the same dispute resolution program, the GameStop

C.A.R.E.S. "Rules were crystal clear." *Ellerbee*, 604 F. Supp. 2d at 355-56 (finding that C.A.R.E.S. was not unconscionable).

> H.     Arbitration Is Empirically Faster Than Court Proceedings.

Plaintiff takes issue with the speed with which arbitration can be completed under C.A.R.E.S., claiming that arbitrations are not faster than court trials.  Opp. at 25-29.  Not surprisingly, Plaintiff offers no statistics to support this position, since the statistics do not support his argument.  According to Federal Court Management Statistics, the median time from the filing of a civil action to the start of trial in the District of Connecticut is 31.5 months (nearly three years).  *See* U.S. District Court Judicial Caseload Profile for the District of Connecticut, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl.  On the other hand, arbitration of employment claims before the AAA typically are completed within 4.5 months. See AAA Online Library, *Representing Yourself In Employment Arbitration: An Employee's Guide,* at 4, available at http://www.adr.org/si.asp?id=4143 (noting "Most employment disputes are resolved between 120-180 days. The average length for all arbitration matters through the AAA is about 4.5 months.")

The only reasons Plaintiff provides for his argument that arbitration is no faster than court is that GameStop C.A.R.E.S allows for a mediation-type procedure to resolve employment claims before they become adversarial, allows for full pre-hearing discovery, allows for scheduling conferences with the arbitrator, allows for motion practice, and allows for post-hearing briefs.  Opp. at 25-27.  Ironically, the lack of these procedures are typically cited by parties who wish to avoid arbitration on the grounds that arbitration does not afford full and fair discovery and other procedural protections.  GameStop C.A.R.E.S. does, however, provide these procedural protections, as Plaintiff points out.  The fact is the Supreme Court has observed that arbitration provides a prompt and effective alternative to court litigation, and Plaintiff provides no authority suggesting that

**ORAL ARGUMENT REQUESTED**

the speed of the arbitration process or statements about its speed relative to court litigation are grounds for invalidating an arbitration agreement. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. -- (2009) slip op. at 7 ("Parties generally favor arbitration precisely because of the economics of dispute resolution").

I.    C.A.R.E.S. Does Not Shorten The Statute of Limitations.

Plaintiff argues that C.A.R.E.S. shortens the statute of limitations for Covered Claims. Opp. at 32. To make this argument, Plaintiff states that the Internal Review Request Form must be filed within the period "allowed by law applicable to the Covered Claim at issue" and that the Notice of Intent To Arbitrate "<u>must</u>" be filed within either thirty days from the date of the decision at the internal review step or within 60 days of submitting the request if no decision is received. *Id.* at 32-33. Based on these statements, Plaintiff argues that the FLSA limitations period is shortened from two or three years, depending upon whether the violation is willful, to sixty days following the filing of the Internal Review Request Form. *Id.* at 33. But Plaintiff's argument rests on a faulty assumption – that GameStop C.A.R.E.S. begins upon the filing of the Notice Of Intent To Arbitrate. Opp. at 33. In fact, the C.A.R.E.S. dispute resolution process begins upon the filing of the Internal Review Request Form and, as Plaintiff correctly points out, that form must be filed within the period "allowed by law applicable to the Covered Claim at issue." Opp. at 32-33; Parent Aff. Ex. A. at 5. There is nothing improper (and Plaintiff makes no claim of impropriety) with an internal step to try to resolve the dispute prior to the adversarial process of arbitration. *See, e.g., Capone,* 2007 WL 1520112 at *1 (enforcing three-step dispute resolution program that culminated in mandatory arbitration). C.A.R.E.S. simply does not shorten the statute of limitations period.[5]

---

[5]  Even if C.A.R.E.S. began upon the filing of the Notice Of Intent To Arbitrate, which it does not, Plaintiff's argument still is baseless. This is true because Plaintiff once again misquotes C.A.R.E.S. by claiming that it says the Notice of

**J.     C.A.R.E.S. Provides for *Prospective* Modification Only After Thirty Days Notice.**

Finally, Plaintiff claims that C.A.R.E.S. is unconscionable because it is purportedly "unilaterally modifiable and terminable."  Opp. at 37-38.  In support of this argument, Plaintiff cites cases from outside Connecticut and the Second Circuit.  *See, e.g., Hooters of Am. v. Phillips,* 173 F.3d 933 (4th Cir. 1999); *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126 (7th Cir. 1997).  These cases are inapposite because in each case, the arbitration agreement in question was unilaterally modifiable such that the employer could rescind or revoke the <u>entire</u> agreement at any time, which rendered the agreement illusory.  In other words, if an employee sought to compel arbitration against his or her employer, the employer could simply rescind the agreement and force the claim to court.  Indeed, the arbitration agreement in *Gibson* even stated that the policy "does not constitute a contract nor a promise of any kind."  *Gibson,* 121 F.3d at 1133 (Cudahy, concurring).  Likewise, the arbitration agreement in *Hooters* could permit the employer "to change the rules in the middle of an arbitration proceeding."  *Hooters,* 173 F.3d at 939.

C.A.R.E.S., however, does not permit such modification or revocations.  GameStop can modify the terms of C.A.R.E.S. with thirty days notice, but such modification (or even revocation) is <u>prospective</u> only:

> GameStop may from time to time modify or discontinue GameStop C.A.R.E.S. by giving covered employees thirty (30) calendar days notice; <u>however, any such modification or rescission shall be applied</u>

---

Intent To Arbitrate "must" be filed within either thirty days from the date of the decision at the internal review step or within 60 days of submitting the request if no decision is received.  Opp. at 32-33.  C.A.R.E.S., however, actually states that the Notice Of Intent To Arbitrate "should" – not "must" – be brought within either 30 or 60 days of submitting the Internal Review Request Form, but that it "must" be brought within the applicable statute of limitations period.  Parent Aff. Ex. A at 7.  Thus, even if C.A.R.E.S. began upon filing of the Notice of Intent To Arbitrate, the only requirement is that Notice be filed within the period "allowed by law applicable to the Covered Claim at issue."  *Id.*

**ORAL ARGUMENT REQUESTED**

**prospectively only.  An employee shall complete the processing of any dispute pending in GameStop C.A.R.E.S. at the time of an announced change, under the terms of the procedure as it existed when the dispute was initially submitted to GameStop C.A.R.E.S.**

Parent Aff. Ex. A at 3 (emphasis added).  Unlike the agreements in the cases cited by Plaintiff, past or existing claims are decided based on the version of C.A.R.E.S. as it existed when the dispute was initially submitted.  Thus, C.A.R.E.S. is not illusory, and Plaintiff's contention to the contrary is meritless.  Indeed, courts have repeatedly held that arbitration agreements that allow a party to prospectively modify them with notice are enforceable and not illusory.  *See, e.g., Fahim,* 1998 WL 1967944 at *3; *Martin v. Citibank, Inc.,*  567 F. Supp. 2d 36, 45 (D.D.C. 2008) (where employer is required to provide thirty days notice of prospective modifications to arbitration agreement "affords employees sufficient protection against inequitable assertions of power"); *Duncan v. Office Depot*, 973 F. Supp. 1171, 1175 (D. Or. 1997) (employer may prospectively modify terms of employment, and employee impliedly accepts such modification by continuing employment).

VI.    **CONCLUSION**

For the foregoing reasons, the Court should reject Plaintiff's challenges to C.A.R.E.S. and dismiss this action or, in the alternative, stay proceedings and compel arbitration.

Dated:      July 6, 2009               By: /S/ Sam S. Shaulson

                                      **MORGAN LEWIS & BOCKIUS LLP**
                                      **Sam S. Shaulson (CT-19910)**
                                      **Debra Morway (CT-20592)**
                                      **101 Park Avenue**
                                      **New York, NY 10178**
                                      **Telephone: 212.309.6000**
                                      **Facsimile: 212.309.6001**
                                      **sshaulson@morganlewis.com**
                                      **dmorway@morganlewis.com**

                                      **Attorneys for Defendant**

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2009, Defendant GameStop, Inc.'s Reply in Support of its Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Proceedings and Compel Arbitration was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:   /s/ Sam S. Shaulson
Sam S. Shaulson