**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JUSTIN POMPOSI,  individually and** | : | |
| **on behalf of other similarly situated** | : | |
| **individuals,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:09-cv-340 (VLB)** |
| **GAMESTOP, INC.,** | : | |
| **Defendant.** | : | **January 11, 2010** |

**MEMORANDUM OF DECISION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO STAY PROCEEDINGS AND COMPEL ARBITRATION [Doc. #11]**

   The Plaintiff, Justin Pomposi, brought this purported collective action for

unpaid wages and damages alleging that his former employer, GameStop, Inc.

("GameStop"), failed to pay him minimum wage and overtime in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Connecticut

Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 et seq.  The Defendant has

moved to dismiss the action or, in the alternative, to stay the proceedings and

compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et

seq., on the basis that the Plaintiff entered into a binding arbitration agreement with

GameStop expressly agreeing to resolve any claims for minimum wage and

overtime through arbitration with the American Arbitration Association.  For the

reasons that follow, the Defendant's motion is GRANTED and the parties are ordered

to proceed to arbitration.

## I.  Factual Background

The following facts are taken from the Plaintiff's Complaint as well as the

Affidavit of Daniel Parent[1] filed in support of the instant motion, the affidavits of the

Plaintiff and Richard E. Hayber, Esq., filed in opposition, and the exhibits attached

thereto.[2]

### A.  Plaintiff's Allegations

The Plaintiff formerly held the position of Store Manager in GameStop's

Meridan, Connecticut store.  GameStop is a game and entertainment software

retailer with more than 5,100 stores worldwide, including fifty stores in Connecticut.

GameStop's headquarters are in Grapevine, Texas.  The company employs

approximately 46,000 persons, and its worldwide sales in 2007 totaled $7.1 billion.

The Plaintiff alleges that, during his employment at GameStop, he was wrongfully

classified as an exempt managerial employee and is therefore entitled to unpaid

wages and overtime premiums pursuant to the FLSA and the CMWA.  On March 9,

2009, he filed this action on behalf of himself and all other similarly situated present

---

[1]  Daniel Parent has served as a Divisional Human Resources and Recruiting Manager for GameStop since August 2007, and his territory includes the store in Meriden, Connecticut where the Plaintiff was formerly employed as a Store Manager. Parent Aff. ¶¶ 1-2.

[2]  The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration.  See BS Sun Shipping Monrovia v. Citgo Petroleum Corp., No. 06 Civ. 839(HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.") (citing Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32-33 (2d Cir. 2001)).

and former GameStop Store Managers in Connecticut.

## B. Arbitration Agreement

In September 2007, GameStop introduced the "GameStop C.A.R.E.S. Rules of Dispute Resolution Including Arbitration" ("C.A.R.E.S.")[3] during an annual conference in Las Vegas, Nevada. Parent Aff. ¶ 3 and Exs. A and B thereto. The Plaintiff and other Stores Managers were in attendance at the conference. GameStop claims that, during the conference, all Store Managers were given a presentation regarding the C.A.R.E.S. program and provided with C.A.R.E.S. program documents, which consisted of a copy of the rules and a brochure. Parent Aff. ¶¶ 3-4. The Plaintiff does not deny the truth of these claims. Instead, he indicates that he does not recall a C.A.R.E.S. presentation being given at the conference, and that he was not given a copy of the rules as a separate document, although they may have been included in the Store Managers' handbook that he received. Pl. Aff. ¶¶ 6, 12-14. He admits that he received a copy of the brochure. Id. at ¶ 5.

On September 12, 2007, the Plaintiff executed a written acknowledgment certifying that he received a copy of the Store Managers' handbook containing the C.A.R.E.S. rules and agreeing to be bound by the C.A.R.E.S. program. Parent Aff., ¶ 4. The acknowledgment provided as follows: "I understand that by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S., I am agreeing that all workplace disputes or claims, regardless of when those

---

[3] C.A.R.E.S. stands for Concerned Associates Reaching Equitable Solutions.

3

disputes or claims arose, will be resolved under the GameStop C.A.R.E.S. program rather than in court.  This includes legal and statutory claims, and class or collective action claims in which I might be included."  Parent Aff., Ex. C.  The effective date for the C.A.R.E.S. program was September 17, 2007, five days after the date on which the Plaintiff signed the acknowledgment.  Parent. Aff. ¶ 10.  The Plaintiff contends that he was not informed of the effective date for C.A.R.E.S., and that he returned to work because he needed his job and not because he had agreed to the C.A.R.E.S. procedures.  Pl. Aff. ¶¶ 15-17.  He also claims that at no point since signing the acknowledgment has he believed that he by doing so he waived his right to bring a class or collective action claim for unpaid overtime compensation.  Id. ¶ 18.

C.A.R.E.S. set forth a mandatory three-step dispute resolution procedure.  First, an employee could engage in dialogue with a supervisor, manager, or Human Resources representative to solve a dispute.  Parent Aff., Ex. A at 1.  Failing that, the dispute would be reviewed internally and decided upon by a Human Resources Executive Review Officer.  Id.  If this step did not resolve the issue, then the dispute was submitted to a neutral arbitrator whose final decision was binding on the employee and GameStop.  Id.

The brochure provided to Store Managers, which the Plaintiff admits receiving, notified employees that "[i]f you and GameStop cannot reach a satisfactory resolution of a concern or issue, there is the option of submitting the dispute to a neutral third-party arbitrator."  Parent Aff., Ex. B at 2.  The brochure further stated that, "by continuing employment with GameStop and its affiliates after

4

the effective date, you agree to use GameStop C.A.R.E.S. to resolve workplace disputes and claims, including legal and statutory claims, . . . and to accept an arbitrator's award as the final, binding and exclusive determination of all claims." Id. at 3.  The rules were far more detailed than the brochure.  The first page of the document stated that it was a "mutual agreement to arbitrate" pursuant to the Federal Arbitration Act and that "[t]he company and you agree that the procedures provided in these Rules will be the sole method used to resolve any Covered Claim as of the Effective Date of the Rules, regardless of when the dispute or claim arose." Parent Aff., Ex. A at 1.  The document notified employees that if direct dialogue and internal review were not successful, "the Covered Claim is submitted to a neutral arbitrator who will rule on the merits of your Covered Claim.  However, once a Notice of Intent to arbitrate is filed but before you proceed to arbitration, either you or GameStop may refer the dispute to nonbinding mediation." Id.  The rules further specified that "C.A.R.E.S. does not change any substantive rights, but simply moves the venue for the dispute out of the courtroom and into arbitration." Id.  The rules preserved an at-will employment relationship.  Id.

The second page of the document contained a collective action waiver in all capital letters stating that "No Covered Claim may be initiated or maintained on a class, collective or representative action basis either in court or under these rules, including in arbitration.  Any Covered Claim purporting to be brought as a class action, collective action or representative action will be decided under these rules as an individual claim . . . ."  The rules defined Covered Claims to include violation of any federal or state statute relating to minimum wage and overtime.  Id. at 3.  The

5

rules incorporate the American Arbitration Association's ("AAA") Employment Dispute Resolution Procedures, provide a neutral selection process for the arbitrator, allow either party to be represented by counsel, permit discovery in any form allowed by the Federal Rules of Civil Procedure, and apply the state or federal substantive law which would be applied by a United States District Court sitting where the events giving rise to the claim took place.  Parent. Aff., Ex. A at 6-12.

　　　After executing the C.A.R.E.S. program acknowledgment, the Plaintiff continued his employment with GameStop until he was terminated for cause on August 5, 2008 as a result of his failure to bring bank deposits to the bank in a timely manner.  Pl. Aff. ¶ 19.  The Plaintiff did not follow the C.A.R.E.S. dispute resolution procedures before filing suit in this Court.  Parent Aff. ¶ 9.

## II. Discussion

　　　The Second Circuit has held that, "[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act, [courts] apply a standard similar to that applicable to a motion for summary judgment.  If there is an issue of fact as to the making of the agreement for arbitration, then a trial on that issue is necessary.  However, a party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of its claim in order to precipitate the trial contemplated by 9 U.S.C. § 4.  If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  DuBois v. Macy's East Inc., No. 07-5441-CV, 2009 WL 2030195, at *1 (2d Cir. July 9, 2009) (internal citations omitted).

6

"The [FAA] provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'  9 U.S.C. § 2.  By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitrate on issues as to which an arbitration agreement has been signed.  §§ 3, 4."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  "The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

"Pursuant to the FAA, the role of courts is limited to determining two issues: 1) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate."  Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks omitted).  In this case, it is undisputed that the Plaintiff elected to file suit in this Court rather than proceed to arbitration.  Therefore, the sole issue to be decided by the Court is whether a valid agreement to arbitrate the claims asserted by the Plaintiff exists.

The Court holds that the Plaintiff executed a valid agreement to arbitrate the claims asserted in this lawsuit.  In September 2007, the Plaintiff attended a conference in Las Vegas during which the C.A.R.E.S. program was presented and

7

during which he received C.A.R.E.S. program documents, including a brochure and a handbook containing a detailed rules document.  On September 12, 2007, the Plaintiff executed a written acknowledgment in which he agreed to resolve all workplace disputes under the C.A.R.E.S. program by continuing his employment after the effective date.  The Plaintiff did in fact continue his employment after the effective date of the C.A.R.E.S. program, which was September 17, 2007.  Thus, he expressly agreed to resolve any employment-related dispute, including claims for minimum wage and overtime under the FLSA and state law, through binding arbitration.

In light of the "liberal federal policy favoring arbitration agreements," courts have compelled arbitration of wage payment claims such as those brought by the Plaintiff in this case.  See, e.g., Guyden, 544 F.3d at 382-84; Baker & Taylor, Inc. v. Alphacraze.com Corp., 578 F. Supp. 2d 374, 377-78 (D. Conn. 2008).  In fact, the District of Massachusetts considered the exact same C.A.R.E.S. arbitration agreement at issue here, and found it to be enforceable and "crystal clear."  Ellerbee v. GameStop, Inc., 604 F. Supp. 2d 349, 355 (D. Mass. 2009).  In Ellerbee, GameStop moved to compel arbitration and dismiss the plaintiff's action for alleged race discrimination and retaliation.  The District of Massachusetts granted the motion and ordered the parties to proceed to arbitration under the terms of the C.A.R.E.S. program.  Id. at 351.  The District of Massachusetts enforced the arbitration agreement despite the fact that the plaintiff in that case, unlike Pomposi, did not actually sign an acknowledgment of the C.A.R.E.S. program, holding that the "Defendant's actions would have put a reasonably prudent employee such as

Plaintiff on notice of the C.A.R.E.S. Program as a matter of law." Id. at 355.  The District of Massachusetts concluded that "[t]here can be no doubt that the Rules specified that the C.A.R.E.S. Program covered arbitration and was binding upon Plaintiff" and that, "[i]n an at-will employment relationship, Plaintiff's continued employment constituted adequate consideration for the agreement." Id.  Unlike the plaintiff in Ellerbee, the Plaintiff in this case actually signed an acknowledgment in which he expressly agreed to resolve all workplace disputes or claims through the C.A.R.E.S. program.  Thus, the validity of the C.A.R.E.S. program is even more clear-cut in this case than it was in Ellerbee.

The conclusion that the C.A.R.E.S. arbitration agreement is valid and enforceable is supported by other decisions of this Court enforcing similar arbitration provisions in employment-related disputes.  See, e.g. Sidell v. Structured Settlement Investments, No. 3:08-cv-710 (VLB), 2009 WL 103518, at *2 (D. Conn. Jan. 14, 2009) (holding that a broad arbitration clause and incorporation by reference of rules allowing the arbitrator to decide issues of arbitrability provided clear and unmistakable evidence that the arbitrator would decide questions of arbitrability); Ferguson v. United Healthcare, No. 3:08-cv-1389 (MLK), 2008 WL 5246145, at *6 (D. Conn. Dec. 17, 2008) (granting employer's motion to compel arbitration where employee received a copy of her employer's arbitration agreement in her employment handbook and executed an acknowledgment confirming that she had received and reviewed the handbook and arbitration agreement); Capone v. Electric Boat Corp., No. 3:06-cv-1249 (JCH), 2007 WL 1520112, at *6 (D. Conn. May 18, 2007) (enforcing arbitration agreement despite the fact that employee had not signed the

agreement and holding that "where an individual's employment is at will, continued employment is sufficient consideration to render an arbitration agreement binding").

The Plaintiff advances numerous arguments as to why this Court should hold the C.A.R.E.S. program to be invalid and unenforceable.  However, upon review, none of these arguments is persuasive.

First, the Plaintiff argues that the arbitration agreement is invalid because he did not assent to it and the agreement is not supported by sufficient consideration.  However, the acknowledgment which the Plaintiff signed expressly states that "I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court."  Parent Aff., Ex. C.  The Plaintiff attempts to avoid arbitration by arguing that the effective date of the C.A.R.E.S. program was never "announced."  However, as stated in the Affidavit of Daniel Parent, the effective date of C.A.R.E.S. was September 17, 2007, and this date was announced at a mandatory meeting for Store Managers in Las Vegas, Nevada that the Plaintiff admits attending.  Pomposi Aff. ¶ 3; Supp. Parent Decl. ¶¶ 2-4.  The Plaintiff does not dispute the announcement of the C.A.R.E.S. program's effective date of September 17, 2007 at the conference he admitted attending, but merely states that he does not "recall being told an 'effective date' of this new procedure."  Pomposi Aff. ¶ 15.  The fact that the Plaintiff does not recall an announcement of the effective date for the C.A.R.E.S. program provides no basis to invalidate an agreement that the Plaintiff assented to as evidenced by his execution of the acknowledgment.

Relying upon <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1, 18 (1995), the Plaintiff also claims that the Defendant cannot prove that he assented to the C.A.R.E.S. program because continued employment can "never" be considered sufficient evidence of assent in an employment contract.  In <u>Torosyan</u>, the Connecticut Supreme Court stated, "When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, . . . the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms."  <u>Id.</u> at 18.  However, the facts of <u>Torosyan</u> are clearly distinguishable from the facts in the case at bar.  First, the plaintiff in <u>Torosyan</u> had a contractual right to be discharged only for cause, while the Plaintiff here was an at-will employee.  <u>See</u> <u>Fahim v. CIGNA Inv., Inc.</u>, No. 3:98-cv-232, 1998 WL 1967944, at *3 (D. Conn. Sept. 10, 1998) (distinguishing <u>Torosyan</u> where employee was at-will and enforcing arbitration policy accepted by continued employment on the basis that the employee had no "'legitimate expectation about the terms of employment,' i.e. to be free of the arbitration policy").  Furthermore, the Connecticut Supreme Court stated in <u>Torosyan</u> that, while continued employment "cannot itself mandate a finding of consent," it "may be relevant to determining whether [the employee] consented to the new contract."  234 Conn. at 19.  Here, unlike in <u>Torosyan</u>, the Plaintiff's continued employment in this case was not the only evidence of his assent to the C.A.R.E.S. program, as he also signed an acknowledgment in which he expressly agreed to resolve claims under C.A.R.E.S.

The Plaintiff further argues that there was insufficient consideration for the agreement because there is no evidence on the record that his acceptance of the C.A.R.E.S. program was an express condition of his continued employment. "[W]here an individual's employment is at will, continued employment is sufficient consideration to render an arbitration agreement binding." Capone, 2007 WL 1520112, at *6. The Plaintiff does not dispute this principle, but instead claims that the language of the acknowledgment could have stated more clearly that acceptance of the C.A.R.E.S. program was a condition of continued employment. The acknowledgment provides that "by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S., I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court." Parent Aff., Ex. C. While the Plaintiff may be correct that the language of the acknowledgment could be better phrased, he cites no legal authority supporting his contention that it is so deficient as to render the arbitration agreement invalid. Indeed, the District of Massachusetts analyzed the exact same arbitration agreement in Ellerbee and found that the "Plaintiff's continued employment constitutes adequate consideration for the contract." 604 F. Supp. 2d at 354. The Court here concludes, as the District of Massachusetts held in Ellerbee, that, by choosing to continue working at GameStop, the Plaintiff entered into a valid agreement to arbitrate supported by mutual assent and consideration.

Second, the Plaintiff argues that the collection action waiver contained in the C.A.R.E.S. program is unenforceable under the Second Circuit's "vindication of statutory rights analysis" set forth in In re American Express Merch. Litig., 554 F.3d

12

300 (2d Cir. 2009).  The Second Circuit in <u>American Express</u> held that, to determine if a purported waiver of a statutory right is enforceable, the test that courts should apply is whether it "removes a plaintiff's only reasonably feasible means of recovery."  <u>Id.</u> at 320.  In making this determination, "[r]elevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical effect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns."  <u>Id.</u> at 321.  <u>American Express</u> involved a class action waiver under Fed. R. Civ. P. 23 in an antitrust action brought by a class of consumers.  The plaintiffs in <u>American Express</u> provided expert testimony that the median damages under the Clayton Antitrust Act for individual class members was $1,751.  <u>Id.</u> at 317.  The plaintiffs also provided expert testimony that antitrust cases require extensive expert analysis costing at least $300,000 to in excess of $2 million.  <u>Id.</u>  The Second Circuit concluded that the potential median recovery of $1,751, when compared to potentially millions of dollars in expert fees, would effectively preclude individual actions because expert fees were not recoverable under the Clayton Act and the arbitration agreement in question did not provide for the recovery of expert fees.  <u>Id.</u> at 317-18.  Therefore, the Second Circuit found the class action waiver to be unenforceable because it in effect served to "grant Amex defacto immunity from antitrust liability."  <u>Id.</u> at 320.

13

Despite invaliding the class action waiver before it, the Second Circuit in

American Express repeatedly noted that it was not overruling other cases upholding

class action waivers because the plaintiffs in these cases did not establish facts

showing that "an inability to pursue arbitration on a class basis would be

tantamount to an inability to assert their claims at all."  Id. at 302 n.1.  The Second

Circuit further stated:

> [W]e stress that we do not hold here that class action waivers in
> arbitration agreements are *per se* unenforceable.  We also do not hold
> that they are *per se* unenforceable in the context of antitrust claims.
> Rather, we hold that *each* case which presents a question of the
> enforceability of a class action waiver in an arbitration agreement must be
> considered on its own merits, governed with a healthy regard for the fact
> that the FAA "is a congressional declaration of a liberal federal policy
> favoring arbitration agreements."

Id. at 321.  The Second Circuit also made it clear that the party seeking "to invalidate

an arbitration agreement on the ground that arbitration would be prohibitively

expensive . . . bears the burden of showing the likelihood of incurring such costs."

Id. at 315.

Bearing in mind the liberal federal policy favoring arbitration agreements and

the Second Circuit's admonition that the each case presenting a question of the

enforceability of a class action waiver must be considered on its own merits, the

Court concludes that the collective action waiver at issue in this case is

distinguishable from the class action waiver at issue in American Express.

Importantly, this case involves a collective action waiver under the FLSA, rather than

a Rule 23 class action waiver in an antitrust case as presented in American Express.

This distinction is important because, in American Express, the Second Circuit

relied upon the fact that neither the Clayton Act nor the arbitration agreement at issue provided for the recovery of expert fees, which could total at least several hundred thousand dollars to potentially more than $2 million and would vastly exceed the median recovery of $1,751.  Here, by contrast, the disparity between potential recovery and potential fees and costs is not so great as to render the collective action waiver unenforceable.  The Plaintiff's counsel submits that the amount in controversy is $11,000, while the potential attorney's fees are $45,000 to $60,000 and the potential costs are $1,000 to $2,000.  <u>See</u> Hayber Aff. ¶¶ 4-5.  The claims at issue in this litigation are comparatively straightforward claims for failure to pay minimum wage and overtime under the FLSA and CMWA.  The Plaintiff has not demonstrated a need for extensive expert analysis as was the case in <u>American Express</u>.  Further, the FLSA allows for the recovery of attorney's fees and costs, and the C.A.R.E.S. agreement expressly permits the award of reasonable attorney's fees and costs by the prevailing party to the same extent as available under law.  <u>See</u> 29 U.S.C. § 216(b); Parent Aff., Ex. A at 13 ("If the arbitrator rules in your favor on a claim under which fees and costs can be granted under law, then the arbitrator has the same authority as a judge to award reasonable attorneys' fees and other costs to you.").  Thus, the Plaintiff has failed to meet its burden of showing that the disparity between potential recovery and potential costs are so great that this case could not be effectively prosecuted on an individual basis.

Indeed, several courts have distinguished <u>American Express</u> on the basis that the claims at issue were not prohibitively expensive to litigate on an individual basis.  <u>See</u>, <u>e.g.</u>, <u>Xerox Corp. v. Media Sci., Inc.</u>, 609 F. Supp. 2d 319, 328 (S.D.N.Y.

2009) (distinguishing <u>American Express</u> where facts at issue did not demonstrate "de facto immunity from suit"); <u>Adler v. Dell, Inc.</u>, No. 08-cv-13170, 2009 WL 646885, at *6 (E.D. Mich. Mar. 10, 2009) (finding <u>American Express</u> distinguishable where the claims at issue were "simple consumer fraud claims that are not expensive to litigate and which can easily be prosecuted on an individual basis"); <u>Bonanno v. Quizno's Franchise Co., LLC</u>, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744, at *15 (D. Colo. Apr. 20, 2009) (distinguishing <u>American Express</u> and holding class action waiver to be enforceable where "Plaintiffs' claims involve comparatively simple fraud and consumer protection claims" that did not "require the massive investment of resources that was required in . . . <u>American Express</u>").  Therefore, under the particular circumstances of this case, the Court is not persuaded that the collective action waiver contained in the C.A.R.E.S. agreement would serve to grant GameStop "de facto immunity" from FLSA liability.[4]

       Lastly, the Plaintiff offers a litany of reasons why, in his view, the C.A.R.E.S. program is procedurally and substantively unconscionable.  Specifically, the Plaintiff claims that the C.A.R.E.S. program is procedurally unconscionable because the parties possessed unequal bargaining power and because the true meaning of the program was "hidden and deceptive."  The Plaintiff further asserts that the C.A.R.E.S. program is substantively unconscionable because it includes a waiver of

---

   [4]  **By this holding, the Court does not mean to suggest that FLSA collective action waivers will be enforceable in every case.  Rather, as the Second Circuit stated in <u>American Express</u>, each case must be considered on its own merits, and an FLSA collective action waiver could be found unenforceable if warranted by the facts and circumstances of a particular case.**

collective actions, shortens the limitations period of Covered Claims, does not apply to GameStop and therefore is one-sided, eliminates the Plaintiff's ability to bring a claim with the Department of Labor and/or Small Claims Court, imposes prohibitive costs and fees, and is unilaterally modifiable by GameStop.

The Court first addresses the Plaintiff's procedural unconscionability argument.  "The element of unfair surprise has frequently been termed by commentators and courts as 'procedural unconscionability' and is implicated by bargaining improprieties in the contract formation process."  Emlee Equip. and Leasing Corp. v. Waterbury Transmission, Inc., 31 Conn. App. 455, 463 n.12 (1993). The Plaintiff claims that the C.A.R.E.S. program was unconscionable because it was presented to him and all other management employees on a "take it or leave it" basis and allowed him no opportunity to negotiate the terms of the agreement.  The Plaintiff also claims that he lacked the education and business sophistication needed to protect his interests.  Thus, the Plaintiff asserts contract of adhesion principles in order to avoid his obligation under C.A.R.E.S. to arbitrate his claims. However, the defense of contract of adhesion "may not be invoked to trump the clear language of an agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability."  Klos v. Lotnicze, 133 F.3d 164, 169 (2d Cir. 1997).

"Factors to be considered in determining whether a contract of adhesion is unconscionable include whether the 'coerced' party was on notice of the offending provision; . . . whether the 'coercing' party achieved agreement by fraud or overreaching; and whether any alternatives existed for the 'coerced' party."  Id.  The

17

Plaintiff has offered no evidence that he was coerced into signing the C.A.R.E.S. acknowledgment as a result of GameStop's fraud or overreaching.  Further, the Plaintiff was an at-will employee, and therefore GameStop was free to terminate his employment or change the terms of his employment for any reason, or no reason, at any time.  See Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 697-98 (2002).  In addition, the Plaintiff speaks and writes in English, he graduated from high school, and he completed 60 credits of college course work.  He admits receiving C.A.R.E.S. program documents, and states in his declaration that it was his "understanding from the Acknowledgment and the brochure that GameStop was creating a dispute resolution procedure for any employment disputes or claims . . ." Pomposi Aff. ¶ 9.  Therefore, the Court does not agree that the Plaintiff's unequal bargaining power renders the C.A.R.E.S. program unconscionable.

The Court is also not persuaded by the Plaintiff's contention that the C.A.R.E.S. program is procedurally unconscionable because its terms are hidden and deceptive.  To the contrary, as the District of Massachusetts found in Ellerbee, "the Rules document stated it covered arbitration, set forth the procedures from the first page and contained a waiver in the second, and clearly set forth provisions that were not obscure or hidden from Plaintiff."  604 F. Supp. 2d at 356.  The Plaintiff takes issue with the collective action waiver in particular.  However, the waiver is contained on the second page of the rules document and states, in all capital letters: "No Covered Claim may be initiated or maintained on a class, collective or representative action basis either in court or under these rules, including in arbitration.  Any Covered Claim purporting to be brought as a class action, collective

action or representative action will be decided under these rules as an individual

claim . . . ."  Parent Aff., Ex. A at 2.  It is difficult to conceive of a more conspicuous

or clear waiver than that contained in the rules document.  Nevertheless, the Plaintiff

claims that the waiver was "hidden and deceptive" because it was contradicted by

the acknowledgment, which states:  "I am agreeing that all workplace disputes or

claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in

court.  This includes . . . class or collective action claims in which I might be

included."  Parent Aff., Ex. C.  The Court does not believe the acknowledgment to be

misleading.  Instead, the acknowledgment indicates that all workplace disputes or

claims, including class or collective actions, are governed by C.A.R.E.S., and the

rules document provided to the Plaintiff clearly and expressly states that class or

collective actions are barred.

      In making his procedural unconscionability argument, the Plaintiff relies

heavily upon the First Circuit's decision in Skirchak v. Dynamics Research Corp.,

508 F.3d 49 (1st Cir. 2007).  In Skirchak, the First Circuit held a class action waiver to

be unconscionable under the circumstances presented, which were as follows.  Two

days before the Thanksgiving holiday, the company sent a five line email to all

employees asking them to read three attached documents describing the company's

new Dispute Resolution Program.  Id. at 52.  The email itself did not mention that the

attachments constituted modifications to the employees' terms of employment or

employment contract, nor that they restricted employees' right to a judicial forum or

waived class actions.  Id. at 52-53.  The two class action waivers at issue were only

contained in appendices to the second attachment.  Id. at 53.  Further, the waivers

were in tension with the wording of several other clauses in the documents, such as provisions which indicated that all of the employees' rights and remedies were being preserved.  Id. at 54.  Based upon these facts, the First Circuit found that "[t]he timing, the language, and the format of the presentation of the Program obscured, whether intentionally or not, the waiver of class rights."  Id. at 60.  The First Circuit further explained:

> There was nothing objectionable about the use of e-mail itself.  But the content, the obscurity, and the timing of the e-mail and the failure to require a response raise unconscionability concerns.   The e-mail employees received the Tuesday before Thanksgiving did not state it represented a modification to their employment contract at all.  To the contrary, the attached memorandum clearly noted that the Program "d[id] not limit or change any substantive legal rights of [DRC's] employees." It also described the Program as an "enhanced program" with the intent "to create improved, reasoned, predictable, and reliable processes ...," without mention of any potential disadvantages.  The memorandum also failed to give notice [of the class action waiver].

Id. at 60.  The Plaintiff fails to point out that, in analyzing the C.A.R.E.S. program, the District of Massachusetts in Ellerbee expressly distinguished Skirchak.  As the Ellerbee Court explained, "Skirchak is distinguishable since it concerned the waiver of the right to proceed in a class action that was obscure and buried within an extensive policy document" which stated that the modifications to the company's program were favorable to the employee and did not limit the employee's substantive rights.  604 F. Supp. 2d at 356.  "Here, the word 'arbitration' was bolded in the subtitle of the Rules and an overview of the procedure appeared on the first page.  The provision was not hidden, nor was it couched in non-mandatory language that indicated a judicial forum remained open."  Id.  Likewise, the collective action waiver at issue in this case was contained in all capital letters on the second page of

20

the rules document and its language was "crystal clear." Id. at 355. Skirchak is also distinguishable because the C.A.R.E.S. program was presented at a conference attended by all GameStop store managers and therefore the program's presentation did not serve to obscure the waiver of collective action rights, and because the C.A.R.E.S. program did require a response in the form of a written acknowledgment which the Plaintiff signed.[5]

Finally, the Plaintiff contends that the C.A.R.E.S. program is substantively unconscionable because it includes a waiver of collective actions, shortens the limitations period of Covered Claims, does not apply to GameStop and therefore is one-sided, eliminates the Plaintiff's ability to bring a claim with the Department of Labor and/or Small Claims Court, imposes prohibitive fees and costs, and is unilaterally modifiable by GameStop.

---

[5]  The Plaintiff also claims that the C.A.R.E.S. program is deceptive because it indicates that disputes "can be resolved faster" through C.A.R.E.S. than through litigation, that the program "reduces legal costs for everyone," and that the program is "user-friendly."  The Court does not agree that these statements contained in C.A.R.E.S. documents are deceptive.  The Plaintiff cites no statistics or other evidence to support his argument that the C.A.R.E.S. procedures are unlikely to be any faster than litigation, and in fact, the statistics cited by the Defendant suggest that arbitration is indeed much faster than litigation in this District.  Compare U.S. District Court Judicial Caseload Profile for the District of Connecticut, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl (median time from filing to civil disposition is 10.1 months, and median time from filing to civil trial is 31.5 months); with AAA Online Library, Representing Yourself in Employment Arbitration: An Employee's Guide, at 4, available at http://www.adr.org/si.asp?id=4143 ("Most employment disputes are resolved between 120-180 days.  The average length for all arbitration matters through the AAA is about 4.5 months).  The Plaintiff's arguments regarding the legal fees imposed by C.A.R.E.S. and the procedural complexity of the C.A.R.E.S. program are addressed below in the context of the Court's substantive unconscionability analysis.

The Court does not find the C.A.R.E.S. program to be substantively unconscionable, for the following reasons.  First, the Court does not agree that the C.A.R.E.S. program is substantively unconscionable because it includes a collective action waiver.  The cases cited by the Plaintiff do not hold that FLSA collective action waivers contained in arbitration agreements are unconscionable.  To the contrary, courts that have addressed the issue have held FLSA collective action waivers to be enforceable.  See, e.g., Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir. 2002); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004); Horenstein v. Mortgage Mkt., Inc., 9 Fed. Appx. 618, 619 (9th Cir. 2001); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2008).  Nevertheless, the Plaintiff argues that the collective action waiver is unconscionable because it prohibits employees from recovering compensation obtained by the Secretary of Labor in an action brought on behalf of employees pursuant to 29 U.S.C. § 216(c). However, the Court does not read the C.A.R.E.S. program as barring the Secretary of Labor from initiating an enforcement action and recovering damages on behalf of employees under § 216(c).  Instead, the Court interprets the language in the C.A.R.E.S. program prohibiting employees from being "entitled to a recovery from a class, collective or representative action" to bar an FLSA collective action brought under 29 U.S.C. § 216(b).  As stated previously, the right to bring a collective action under the FLSA is a right that can be waived.  See, e.g., Adkins, 303 F.3d at 503 (finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute").

Second, the Plaintiff's argument that the C.A.R.E.S. program shortens the statute of limitations period for Covered Claims is not supported by the language of the rules document.  Under C.A.R.E.S., the dispute resolution process commences upon the filing of an Internal Review Request Form, which must be filed within the period "allowed by law applicable to the Covered Claim at issue."  Parent Aff., Ex. A at 5.  If the employee is dissatisfied with the result of the Internal Review and has a Covered Claim, he may then initiate arbitration by completing a Notice of Intent to Arbitrate.  Id. at 6.  The rules provide that the Notice of Intent to Arbitrate "should be submitted within thirty (30) calender days of the date of the decision" at the Internal Review step, "or within sixty (60) days of submitting the Request for Internal Review if no decision is received."  Id. at 7.  The rules go on to state that:

> The Notice of Intent to Arbitrate must be received within the time period allowed by law applicable to the Covered Claim at issue, just as the requirement applies if you were proceeding in court.  This is commonly referred to as a statute of limitations and is the period of time that is provided by law for bringing a claim.

Id.  Thus, under the plain language of the agreement, the only mandatory deadline imposed by C.A.R.E.S. is the one imposed by law, namely, the deadline provided by the statute of limitations applicable to the claim in dispute.

Third, contrary to the Plaintiff's assertions, the C.A.R.E.S. program does in fact apply to GameStop as well as employees.  The rules document indicates that the C.A.R.E.S. program is a "mutual agreement to arbitrate" and that the "Company must initiate the arbitration process if it has a Covered Claim against an employee" Parent Aff., Ex. A at 2, 7.  The arbitrator's decision regarding any Covered Claim

23

submitted to arbitration is "final binding on both [the employee] and Gamestop."  Id. at 1.

Fourth, the Court disagrees with the Plaintiff's contention that the C.A.R.E.S. program is unconscionable because it eliminates the Plaintiff's right to bring a claim with the Department of Labor and/or Small Claims Court.  The Plaintiff fails to cite a single case in which a court has found an arbitration agreement to be unconscionable on this basis.  Moreover, the Plaintiff's current claim is ineligible for Small Claims Court because the Plaintiff asserts that his amount in controversy is greater than $5,000.  See Pomposi Aff. ¶ 21.  The Plaintiff's argument that C.A.R.E.S. prohibits a claimant from bringing a claim before the Department of Labor is also unfounded.  The rules document expressly states:  "These Rules do not preclude any employee from filing a charge with a state, local or federal administrative agency such as the Equal Employment Arbitration Commission."  Parent Aff., Ex. A at 2.

Next, the Court does not believe that the C.A.R.E.S. program imposes prohibitive fees.  The filing fee to initiate a claim under C.A.R.E.S., which is paid to the AAA rather than GameStop, is $125, which is nearly three times less than the filing fee for bringing a claim before this Court.  In addition, the C.A.R.E.S. program provides for the waiver of the filing fee where required by law.  See Parent Aff., Ex. A at 6 ("If your state law does not allow for payment of a fee to access arbitration, the fee will be waived.").  Further, if a claimant is successful, he is eligible to receive a reimbursement of the filing fee, as well as his expenses, including attorney's fees and costs.  Id. at 12-13.

Lastly, the C.A.R.E.S. program is not rendered unconscionable by the fact that it is unilaterally modifiable by GameStop.  The cases cited by the Plaintiff are inapposite because the arbitration agreements in question in those cases could be rescinded or revoked by the employer at any time, including during the middle of an arbitration proceeding, and therefore were illusory.  See Hooters of Am. v. Phillips, 173 F.3d 933, 939 (4th Cir. 1999); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1133 (7th Cir. 1997).  Here, by contrast, GameStop can modify the terms of C.A.R.E.S. with thirty days notice, but such modification is prospective only:

> GameStop may from time to time modify or discontinue GameStop C.A.R.E.S. by giving covered employees thirty (30) calendar days notice; however, any such modification or rescission shall be applied prospectively only.  An employee shall complete the processing of any dispute pending in GameStop C.A.R.E.S. at the time of an announced change, under the terms of the procedure as it existed when the dispute was initially submitted to GameStop C.A.R.E.S.

Parent Aff., Ex. A at 3.  Courts have found similar arbitration agreements allowing a party to prospectively modify their terms with notice to be enforceable and not illusory.  See, e.g., See Fahim v. CIGNA Inv., Inc., No. 3:98-cv-232, 1998 WL 1967944, at *3 (D. Conn. Sept. 10, 1998); Martin v. Citibank, Inc., 567 F. Supp. 2d 36, 45 (D.D.C. 2008) (requirement that employer provides thirty days notice of prospective modifications to arbitration agreement "affords employees sufficient protection against inequitable assertions of power").

### III.  Conclusion

Based upon the foregoing reasoning, the Defendant's motion to dismiss or, in the alternative, to stay proceedings and compel arbitration [Doc. #11], is GRANTED.  Pursuant to 9 U.S.C. §§ 3-4, the Plaintiff's Complaint is dismissed and the parties are

ordered to proceed to arbitration under the terms of GameStop's C.A.R.E.S.

Program.  The Clerk is directed to enter judgment for the Defendant, and to close

this case.

**IT IS SO ORDERED.**

_____/s/_____

**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut:  January 11, 2010.**